IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31691-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADRIAN SUTLEJ SAMALIA, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. – Adrian Samalia appeals his conviction for possessing a stolen motor

vehicle. He contends the trial court erred by denying his CrR 3.6 motion to suppress

evidence leading to his identification derived from a cell phone found in an abandoned

stolen vehicle after he fled from the vehicle and evaded pursuit. Because the cell phone

was abandoned, used in pursuit of the fleeing suspect, and not directly used to identify

Mr. Samalia, we hold the trial court did not err in denying suppression of his later

identification from a police database. Accordingly, we affirm.

FACTS

The facts are derived mainly from the trial court's unchallenged CrR 3.6 findings

of fact that are, therefore, verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62

P.3d 489 (2003). Yakima Police Officer Ryan Yates was on patrol when his vehicle

license plate reader indicated he had passed a stolen vehicle. Officer Yates confirmed the vehicle was stolen by radio and then followed the vehicle that stopped shortly thereafter. The driver got out of the vehicle and faced towards Officer Yates. The driver would not obey Officer Yates' command to get back in the vehicle and fled. Officer Yates pursued the male driver but he got away.

Officer Yates returned and searched the car, partly to help identify the driver. He found a cell phone on or in the center console. Not knowing who the phone belonged to, he called some phone numbers found in the cell phone's contacts section. He spoke to Deylene Telles who agreed to meet him. Officer Yates reported to his sergeant what happened and gave the phone to him. The sergeant met with Ms. Telles and called her cell phone from the abandoned cell phone. Her cell phone displayed Mr. Samalia's name and picture. The sergeant gave the name to Officer Yates, who located Mr. Samalia's picture in a police database. Officer Yates then identified Mr. Samalia from the database picture as the fleeing man who had been driving the stolen vehicle.

The State charged Mr. Samalia with possession of a stolen motor vehicle. He moved unsuccessfully to suppress the cell phone evidence under CrR 3.6. From the above facts, the trial court concluded the cell phone was abandoned, therefore, Mr. Samalia no longer had an expectation of privacy in it. Following a bench trial, the court found Mr. Samalia guilty as charged. He appealed.

2

ANALYSIS

The issue is whether the trial court erred by denying Mr. Samalia's CrR 3.6 motion to suppress evidence obtained from his cell phone. He contends the evidence was constitutionally protected and could not be accessed without a warrant.

We review a trial court's decision on a motion to suppress to determine whether the findings are supported by substantial evidence and whether those findings, in turn, support the conclusions of law. *O'Neill*, 148 Wn.2d at 571. We defer to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). As previously mentioned, unchallenged findings of fact are verities on appeal. *O'Neill*, 148 Wn.2d at 571. We review conclusions of law de novo. *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

Under the Washington Constitution, article I, section 7, "No person shall be disturbed in his private affairs . . . without authority of law." Our Supreme Court recently held private affairs include information obtained through a cell phone. *State v. Hinton*, 179 Wn.2d 862, 877, 319 P.3d 9 (2014). Additionally, the Supreme Court of the United States recently noted, "[m]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans the privacies of life[.] The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the

3

protection for which the Founders fought." *Riley v. California*, ___U.S. ___, 134 S. Ct. 2473, 2493, 189 L. Ed. 2d 430 (2014).

A warrantless search violates article I, section 7 unless it falls under one of "'a few jealously guarded exceptions.'" *State v. MacDicken*, 179 Wn.2d 936, 940, 319 P.3d 31 (2014) (quoting *State v. Afana*, 169 Wn.2d 169, 176-77, 233 P.3d 879 (2010)).

Searching voluntarily abandoned property is an exception to the warrant requirement. *State v. Evans*, 159 Wn.2d 402, 407, 150 P.3d 105 (2007); *see also State v. Reynolds*, 144 Wn.2d 282, 287, 27 P.3d 200 (2001) (law enforcement may retrieve and search voluntarily abandoned property without a warrant or probable cause). "Voluntary abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent." *Evans*, 159 Wn.2d at 408 (citing 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 2.6(b), at 574 (3d ed.1996)). "'Intent may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment should be considered.'" *Evans*, 159 Wn.2d at 408 (quoting *State v. Dugas*, 109 Wn. App. 592, 595, 36 P.3d 577 (2001)). The question is whether the defendant relinquished his reasonable expectation of privacy by discarding the property. *Evans*, 159 Wn.2d at 408. The defendant bears the burden of showing he had an actual, subjective expectation of privacy and that his expectation was objectively reasonable. *Evans*, 159 Wn.2d at 409.

A critical factor in determining whether abandonment has occurred is the status of the area where the searched item was located. *State v. Hamilton*, 179 Wn. App. 870,

885, 320 P.3d 142 (2014). "Generally, no abandonment will be found if the searched item is in an area where the defendant has a privacy interest." *Id.* Here, the search area was an unattended stolen vehicle that Mr. Samalia had been driving and had fled from when a police officer approached and directed him to return to the vehicle. A suspect's hasty flight under these circumstances is sufficient evidence of an intent to abandon the vehicle. *See United States v. Tate*, 821 F.2d 1328, 1330 (8th Cir.1987) (suspect who fled unlocked vehicle parked on public road abandoned expectation of privacy); *see also Kurtz v. People*, 494 P.2d 97, 103 (Colo. 1972), *overruled on other grounds by People v. Howard*, 599 P.2d 899 (Colo. 1979) (items seized from vehicle were admissible based on the abandonment of the vehicle, the flight of the accused from the scene on foot, and the fact the accused remained at large at the time of the search). Thus, the status of the area searched shows abandonment. We conclude, Mr. Samalia did not have a privacy interest in the searched area.

We next look to the reasonableness of the officer's actions and Mr. Samalia's intent. Intent may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment should be considered. *Evans*, 159 Wn.2d at 408. The question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of article I, section 7.

Officer Yates spotted and followed a stolen vehicle until it stopped. The driver saw the officer, ignored instructions to remain in the vehicle, fled, and, evaded pursuit.

5

The officer reasonably returned to the vehicle to search for evidence of the driver's identity and continue his pursuit. Mr. Samalia's flight from the stolen vehicle under these circumstances shows his intent to abandon the vehicle, including its contents.

Citing *Hinton* and *Riley,* Mr. Samalia incorrectly argues a warrant is always required to search a cell phone. In *Hinton*, police confiscated a cell phone from an arrestee. 179 Wn.2d at 865. The cell phone received calls and messages at the police station leading to Mr. Hinton's arrest and controlled substance conviction. The *Hinton* court held, "We find that the officer's conduct invaded Hinton's private affairs and was not justified by any authority of law offered by the State." *Id.* at 870. The *Riley* court concluded the search incident to arrest exception to the warrant requirement does not apply to digital data on a cell phone in an arrestee's possession. *Riley,* 134 S. Ct. at 2493-94. But, the *Riley* court reasoned "other case-specific exceptions may still justify a warrantless search of a particular phone." *Riley,* 134 S. Ct. 2473 at 2494. Specifically, the *Riley* court noted the "well-reasoned" exigency exception, "to pursue a fleeing suspect," as a case that may excuse a cell phone search warrant. *Id.*

Mr. Samalia's case is distinguished from *Hinton* and *Riley* because the cell phone was not seized from Mr. Samalia's person during his arrest, but was found abandoned in a stolen vehicle. Voluntarily abandoned property is an exception to the warrant requirement. *Evans,* 159 Wn.2d at 407. The use of the cell phone in Mr. Samalia's case comes within both the *Evans* abandonment exception and the exigency exception to pursue a fleeing suspect recognized in *Riley.* Moreover, the use of Mr.

6

No. 31691-2-III
*State v. Samalia*

Samalia's cell phone was attenuated because the cell phone information used to get his name came from Ms. Telles' cell phone, not the abandoned cell phone, and the officer used the name to identify Mr. Samalia from existing police records. Further, the police were unsure who owned the abandoned cell phone.

Given our reasoning, we conclude the officer did not require a warrant to use the abandoned cell phone in the manner described here. Further, a warrant was unnecessary under *Riley* because the abandoned cell phone was used to pursue the fleeing suspect. Finally, the use of the abandoned cell phone was too attenuated because the information leading to Mr. Samalia's identification in a police database came in the form of a name appearing on Ms. Telles' cell phone. Therefore, we hold the trial court did not err in denying Mr. Samalia's CrR 3.6 suppression motion concerning his identification. Given our analysis, we do not reach the State's arguments concerning standing, ownership of the cell phone, and the State's right to impound the stolen vehicle.

Affirmed.

Brown, J.

I CONCUR:

Korsmo, J.

7

No. 31691-2-III

SIDDOWAY, J. (dissenting) — One of the few jealously and carefully drawn exceptions to the warrant requirements of the Fourth Amendment to the United States Constitution and Washington Constitution article I, section 7 is voluntarily abandoned property. *State v. Evans*, 159 Wn.2d 402, 407, 150 P.3d 105 (2007). The issue is not abandonment in the strict property right sense but, rather, whether the defendant in leaving the property has relinquished his reasonable expectation of privacy so that the search and seizure is valid. *Id.* (citing *State v. Dugas*, 109 Wn. App. 592, 595, 36 P.3d 577 (2001), citing, in turn, *United States v. Hoey*, 983 F.2d 890, 892-93 (8th Cir. 1993)). Courts ordinarily find that a defendant has relinquished his reasonable expectation of privacy by leaving property behind in an area where the defendant does not have a privacy interest. *Evans*, 159 Wn.2d at 409. "The great majority of the court decisions having to do with the abandonment of effects in a search and seizure context are [those in which] it appears the defendant tried to dispose of certain incriminating objects upon the lawful approach of or pursuit by the police." 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 2.6(b), at 875 (5th ed. 2012).

By contrast, when a defendant like Adrian Samalia flees the scene of a crime and leaves behind his cell phone, it is reasonable to assume that it is *not* because he prefers

that police recover it outside his possession but is instead through inadvertence or lack of an opportunity to retrieve it. Nonetheless, as observed by Professor LaFave (although not directly addressing cell phones) even an inadvertent leaving of effects in a public place, whether or not an abandonment in the true sense of that word, has historically amounted to a loss of any justified expectation of privacy. *Id.*; *but cf. State v. Hamilton*, 314 Mont. 507, 67 P.3d 871 (2003) (an individual who loses or misplaces property continues to have an expectation of privacy but it is diminished to the extent that the finder may examine the contents as necessary to identify the owner); *Morris v. State*, 908 P.2d 931 (Wyo. 1995) (same); *State v. Kealey*, 80 Wn. App. 162, 175, 907 P.2d 319 (1995) (same).[1]

"Involuntary" abandonment has been held to exist only where property is abandoned in response to illegal police conduct; that in turn, requires showing "'(1) unlawful police conduct and (2) a causal nexus between the unlawful conduct and the abandonment.'" *State v. Reynolds*, 144 Wn.2d 282, 288, 27 P.3d 200 (2001) (quoting *State v. Whitaker*, 58 Wn. App. 851, 853, 795 P.2d 182 (1990)). The trial court correctly found that the conduct of Officer Ryan Yates, who recovered Mr. Samalia's cell phone

---

[1] *Kealey* held that police have a right, if not an obligation to attempt to identify and notify the owner of lost property. 80 Wn. App. at 175 & n.47 (citing RCW 63.21.060). Here, though, police did not identify themselves to Ms. Telles as law enforcement seeking to return an abandoned telephone nor, according to the evidence, was that their purpose in searching data on the phone.

2

from the console of the stolen car, was lawful, and from that concluded that Mr. Samalia had not made the showing required for voluntary abandonment.

Recent search and seizure jurisprudence recognizes that conventional cell phones are fundamentally different from other property, and that exceptions to the warrant requirement might not apply or might apply more narrowly where a cell phone or a similar device is at issue. As observed last year by the United States Supreme Court, "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Riley v. California*, __ U.S. __, 134 S. Ct. 2473, 2488-89, 189 L. Ed. 2d 430 (2014). I dissent in this case because I conclude, considering Washington's search and seizure jurisprudence under article I, section 7 of the Washington constitution as a whole, that police must generally secure a warrant before conducting a search of data on a cell phone—even one that has been left behind in a place where its owner has no privacy interest.

In a series of decisions, our Supreme Court has found that certain information revealing intimate aspects of life that citizens have held, and should be entitled to hold safe from government trespass, is entitled to protection under article 1, section 7 of the Washington constitution regardless of whether the citizen has a privacy interest in the place where it is found.

In *State v. Gunwall*, 106 Wn.2d 54, 65-66, 720 P.2d 808 (1986), the court held that while the United States Supreme Court had found that Fourth Amendment protection did

3

not extend to telephone toll billing records or pen registers, our state constitution required separate analysis because it "focuses on the protection of a citizen's private affairs," justifying a "more expansive interpretation" than under the Fourth Amendment, and because the State of Washington "has a long history of extending strong protections to telephonic and other electronic communications." The court concluded that when police obtained records of the defendant's calls without benefit of the issuance of any valid legal process, "they unreasonably intruded into her private affairs without authority of law and in violation of Washington Const. art. [I], § 7." *Id.* at 68.

In *State v. Boland*, 115 Wn.2d 571, 580, 800 P.2d 1112 (1990), our Supreme Court held that article I, section 7 of our constitution protects garbage cans placed on the curb from warrantless searches by law enforcement, affirming that "the location of a search is indeterminative when inquiring into whether the State has unreasonably intruded into an individual's private affairs."

In *State v. Jackson*, 150 Wn.2d 251, 262, 76 P.3d 217 (2003), the court held that a warrant was required in order to install a GPS device on a vehicle for purposes of tracking it, observing that

> the intrusion into private affairs made possible with a GPS device is quite extensive as the information obtained can disclose a great deal about an individual's life. . . . In this age, vehicles are used to take people to a vast number of places that can reveal preferences, alignments, associations, personal ails and foibles. The GPS tracking devices record all of these travels, and thus can provide a detailed picture of one's life.

4

In *State v. Jorden*, 160 Wn.2d 121, 129, 156 P.3d 893 (2007), the court held that the information contained in a motel registry is a private affair under article I, section 7, reasoning that not only may an individual's very presence in a motel or hotel be a sensitive piece of information, but that the registry may also reveal co-guests in the room; individually or collectively, the information may provide intimate details about a person's activities and associations.

It was in a different context that our Supreme Court addressed the private character of personal information maintained on a cell phone in *State v. Hinton*, 179 Wn.2d 862, 319 P.3d 9 (2014), but the court's discussion of the historically strong protection for the type of information a cell phone can contain compels the conclusion that it, like the information procured by law enforcement in *Gunwall, Boland, Jackson,* and *Jorden,* is subject to the warrant requirement regardless of where law enforcement finds the phone. In *Hinton,* the defendant was not the cell phone owner, but an individual who sent inculpatory text messages to a cell phone that police had seized following the arrest of a drug dealer. Armed with the drug dealer's phone, police responded to at least two incoming texts—one of them, Mr. Hinton's—by arranging meetings for drug transactions and then arresting the would-be purchasers at the proposed meeting site.

The court readily concluded that reviewing the cell phone for text messages was an intrusion into private affairs:

Viewing the contents of people's text messages exposes a "wealth of detail about [a person's] familial, political, professional, religious, and sexual associations." *United States v. Jones*, ___ U.S. ___, 132 S. Ct. 945, 955, 181 L. Ed. 2d 911 (2012) (Sotomayor, J., concurring) (discussing GPS (global positioning system) monitoring). Text messages can encompass the same intimate subjects as phone calls, sealed letters, and other traditional forms of communication that have historically been strongly protected under Washington law. Although text message technology rendered Hinton's communication to Lee more vulnerable to invasion, technological advancements do not extinguish privacy interests that Washington citizens are entitled to hold. The right to privacy under the state constitution is not confined to "a 'protected places' analysis," or "to the subjective privacy expectations of modern citizens who, due to well publicized advances in surveillance technology, are learning to expect diminished privacy in many aspects of their lives." *Myrick*, 102 Wash.2d at 513, 511, 688 P.2d 151.

*Hinton*, 179 Wn.2d at 869-70.[2]

The United States Supreme Court described the uniquely extensive and sensitive character of cell phone data in even greater detail in *Riley*. What follows is only a portion of its discussion of why a search of data from a cell phone is unlike a search for other property:

The storage capacity of cell phones has several interrelated consequences for privacy. First, a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand

---

[2] A four-member dissent disagreed with the *Hinton* majority, but on standing grounds; it stated that "[w]hile the constitutionality of a warrantless search of one's own cell phone is certainly in need of clarification, it is a question for another day." *State v. Hinton*, 179 Wn.2d 862, 882, 319 P.3d 9 (2014) (Johnson, J., dissenting).

6

photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.

. . . [C]ertain types of data are also qualitatively different. An Internet search and browsing history, for example, can be found on an Internet-enabled phone and could reveal an individual's private interests or concerns—perhaps a search for certain symptoms of disease, coupled with frequent visits to WebMD. Data on a cell phone can also reveal where a person has been. Historic location information is a standard feature on many smart phones and can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building. . . .

*Riley*, 134 S. Ct. at 2489-90.

Summarizing its discussion of the type and volume of personal information found on a cell phone, the *Riley* court quoted Learned Hand as having observed in 1926 that "it is 'a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him;'" the Court then observed that if the man's

pockets contain a cell phone, however, that is no longer true. Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Id.* at 2490-91 (quoting *United States v. Kirschenblatt*, 16 F.2d 202, 203 (C.A.2) (1926)).

In this case, Adrian Samalia pulled over and stopped the stolen car he was driving, while being followed by Officer Yates. The officer had confirmed the car was stolen and was following Mr. Samalia while awaiting backup. Mr. Samalia's stop caused Officer Yates to activate his lights. After Mr. Samalia stepped out of his car and saw that Officer Yates had pulled out his service weapon and intended to detain him, Mr. Samalia fled. It is reasonable to assume that he either forgot about his cell phone in the console of the stolen car or decided that if he hoped to escape, retrieving the phone was not an option.

No reported Washington decision has directly addressed whether a citizen relinquishes his reasonable expectation of privacy in the data on his cell phone by leaving the phone behind at the scene of a crime. In my view, the *Gunwall* to *Jorden* line of cases, together with *Hinton*, collectively compel the conclusion that the voluminous private information likely to be found on a cell phone remains protected by article I, section 7 of the Washington constitution even when the phone is left behind in a place where the defendant has no privacy interest. Requiring a search warrant will assure that there is probable cause to believe that the defendant is involved in criminal activity and that evidence of the criminal activity can be found in the data on the cell phone. In this case Officer Yates presumably would have been able to demonstrate probable cause to a magistrate, as long as he first spoke to the owner of the stolen car and confirmed that the phone did not belong to her or some innocent prior passenger.

The only other exception to the warrant requirement for the data on Mr. Samalia's cell phone identified by the majority is the exigency exception that it notes was recognized in *Riley*. Majority at 7. But *Riley* holds that obtaining a warrant to search data on a cell phone should be the rule because "data on the phone can endanger no one." *Riley*, 134 S. Ct. at 2485. While recognizing that the exigent circumstances exception will be available in some cases, the Court observed that the exception "requires a court to examine whether an emergency justified a warrantless search in each particular case." *Id.* at 2494 (citing *Missouri v. McNeely*, __ U.S. __, 133 S. Ct. 1552, 1559, 185 L. Ed. 2d 696 (2013)). Here, the State did not argue that exigent circumstances existed nor did the trial court find any. *See* Clerk's Papers (CP) at 11–16 (State's opposition to motion to suppress); CP at 27–32 (findings and conclusions). The only crime as to which Officer Yates had probable cause was Mr. Samalia's possession of a stolen car, and the stolen car had been left behind. There was no evidence that Mr. Samalia was armed, was suspected of any other crime, or otherwise presented a danger.

Finally, the majority concludes that the use of Mr. Samalia's cell phone was attenuated because officers obtained his name from the telephone of Deylene Telles, Mr. Samalia's former girlfriend. Majority at 7. But the evidence was clear that officers identified Ms. Telles only by searching "contacts" on Mr. Samalia's cell phone, and that it was only after using Mr. Samalia's phone to lure her to a meeting at which they arrested her, used Mr. Samalia's phone to call her, and then took her phone to see who it

9

identified as the caller, that they obtained Mr. Samalia's name.[3] Officer Yates thereafter

recognized Mr. Samalia as the driver of the stolen car from a photograph that he located

using the name from Ms. Telles's phone. But the officer had no prior knowledge of Mr.

Samalia nor did he have other information connecting Mr. Samalia to the stolen car. The

independent source exception to the exclusionary rule does not apply.

"The attenuation test suggests that where there are intervening independent factors

along the chain of causation, the taint of illegally obtained evidence becomes so

dissipated as to preclude suppression of derivative evidence as 'fruit' of the illegal police

action." Charles W. Johnson and Debra L. Stephens, *Survey of Washington Search and

Seizure Law: 2013 Update*, 36 SEATTLE U. L. REV. 1581, 1765 (2013) (citing *State v.

Eserjose*, 171 Wn.2d 907, 919, 259 P.3d 172 (2011)). "Washington courts have not

explicitly adopted the attenuation doctrine, but they have applied it." *Id.* The majority

fails to explain any step along the causal chain leading to Officer Yates' review of Mr.

---

[3] Ms. Telles's testimony at Mr. Samalia's bench trial, at which the trial court revisited its suppression decision following a motion for reconsideration, was as follows:

> They were about to handcuff me and right when they—he was like—to walk around me, the other police officer had a phone and they called from that phone to my phone, and that's when my phone brought up a picture and a phone number and a name. And he took the phone out of my hands and he said, "Who is this?"

Report of Proceedings (RP) at 61.

10

*State v. Samalia*
No. 31691-2-III – dissent

Samalia's photograph that was independent of use of the cell phone.

For these reasons, I respectfully dissent.

Siddoway, C.J.

11