IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | NO. 73939-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JAMES A. SHEA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 23, 2015 |
| | ) | |

LAU, J. — A jury convicted James Shea on one count of obstructing a law enforcement officer, one count of hit and run with injury, and one count of possession of methamphetamine. Shea appeals, arguing his conviction should be reversed because (1) the State failed to present evidence that he made a false statement to support the obstruction charge, (2) the trial court erred when it admitted evidence found in Shea's wallet pursuant to an unconstitutional search, (3) the trial court erred when it admitted self-incriminating statements, and (4) counsel's deficient performance denied him his constitutional right to effective assistance of counsel. Finding no errors, we affirm Shea's judgment and sentence.

FACTS

On November 22, 2013, Office Robert Auderer was at Bob's Tavern in Shelton, Washington. Officer Auderer was off-duty and wearing civilian clothing. He left the tavern when he heard commotion outside. He noticed a yellow Mustang had struck a pedestrian, Grant Manning. The front tire of the car was on top of Manning's foot. The driver, later identified as James Shea, backed the car off Manning's foot and drove away, despite bystanders shouting at him to stop. Manning suffered an injury to his foot and knee. Manning required knee surgery due to the injury.

Officer Auderer followed Shea in his personal vehicle and called 911. Shea parked outside of his residence. Officer Auderer parked nearby. As Shea was exiting his car, Officer Auderer identified himself as a police officer and told Shea that he had been involved in an accident and was not free to leave. Officer Auderer testified that he "immediately was met with profanity." Report of Proceedings (RP) (March 27, 2014) at 140. Shea also said something to the effect of "I barely hit that guy. I barely hit him. He wasn't even hurt." RP (March 27, 2014) at 154. Shea began rifling through his pockets. Officer Auderer asked Shea multiple times to keep his hands out of his pockets, but Shea persisted. As a safety precaution, Officer Auderer grabbed Shea by the arm and led him away from his vehicle.

Around this time, three to five of Shea's friends arrived. Some came from inside Shea's residence while others arrived in a car that had been following Shea. Shea's friends surrounded Officer Auderer and questioned his actions. One individual threatened Officer Auderer with physical violence. Officer Auderer described the scene as "intense," explaining that Shea's friends "surrounded me while I'm still trying to hold

onto [Shea] and keep his hands out of his pockets, [and] trying to tell dispatch where I am." RP (March 27, 2014) at 141. Eventually, Officer Auderer was able to remove his Shelton Police Department commission card, bearing a picture of his face, his signature, and a badge declaring he was a Shelton Police Officer. Officer Auderer showed his commission card to Shea and Shea's friends, and one of them exclaimed that Officer Auderer "is a Shelton cop." RP (March 27, 2014) at 144.

Officer Auderer continued to try to restrain Shea, but Shea was uncooperative:

> It was a constant tug of war with [Shea]. He—all I wanted him to do—the only thing I wanted Mr. Shea to do was to keep his hands where I could see him and wait for uniformed officers to get up there so we could complete the investigation, and he refused.

RP (March 27, 2014) at 144. Other officers arrived including Officer Backus. Officer Backus was in uniform and driving a black and white patrol car with blue lights activated. Officer Auderer then asked Shea to place his hands behind his back. Shea continued to disobey Officer Auderer and Officer Backus' commands. During the struggle, Shea attempted to empty his pockets. At one point, he removed his wallet and threw it towards one of his friends.

After Officer Auderer and Officer Backus detained Shea, Officer Auderer retrieved the wallet Shea had thrown. The wallet contained Shea's ID card. Officer Auderer testified that a second ID, a driver's license, had been taken out of the wallet and was on the ground nearby. The wallet also contained methamphetamine.

The State charged Shea with one count of possession of methamphetamine, one count of hit and run with injury, and one count of obstructing a law enforcement officer. The jury convicted Shea on all three counts. Shea appeals.

-3-

## ANALYSIS

### Sufficiency of the Evidence

Shea contends the State failed to present sufficient evidence to prove the obstruction charge beyond a reasonable doubt. He argues that to prove obstruction the State must show that he made a false statement to police officers. We disagree.

In a criminal prosecution, the State must prove each element of the charged crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d. 368 (1970).

> The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.

State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (internal citations omitted). We defer to the factfinder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Relying on State v. Williams, 171 Wn.2d 474, 251 P.3d 877 (2011), Shea argues that a conviction for obstructing a law enforcement officer requires proof that he made a false statement.[1] Because the State failed to show that he made any false statement to a police officer, there was insufficient evidence to support the obstruction charge.

---

[1] We note that Shea also relies on an unpublished opinion from this court in violation of GR 14.1(a). We will not consider Shea's argument insofar as it relies on this citation.

Shea's reliance on Williams is misplaced. Williams does not require evidence of a false statement to prove obstruction. The court in Williams held that an obstruction charge cannot be based solely on a defendant's false statement. Williams, 171 Wn.2d at 486. In Williams, the defendant provided a false name when police officers asked him to identify himself. Williams, 171 Wn.2d at 476. The court held that this false statement alone could not support a conviction for obstruction:

> In order to avoid constitutional infirmities, we require some conduct in addition to making false statements to support a conviction for obstructing an officer.

Williams, 171 Wn.2d at 486. Williams illustrates that conduct is the primary requirement, not speech.

Indeed, neither the plain language of the statute nor case law requires proof of a false statement to sustain a conviction for obstructing a law enforcement officer. RCW 9A.76.020(1) provides that "A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1). In State v. Steen, 164 Wn. App. 789, 265 P.3d 901 (2011) the court held that a defendant who made no statements whatsoever nevertheless obstructed law enforcement when his conduct demonstrated willful obstruction:

> Under RCW 9A.76.020(1)'s plain language, a person may commit obstruction by willfully disobeying a lawful police order in a manner that hinders, delays, or obstructs the officer in the performance of his or her duties . . . . Accordingly, the jury could have found that Steen's conduct here—ignoring the officers' lawful orders to exit the trailer with his hands up while the officers were performing their community caretaking functions—was willful conduct that amounted to obstruction.

Steen, 164 Wn. App. at 800-01.  A person may commit obstruction through his conduct alone—evidence of a false statement is not necessary.  Steen, 164 Wn. App. at 801.

Here, the record shows that the State presented sufficient evidence to prove that Shea willfully obstructed the officers' performance of their duties.  Both Officer Auderer and Officer Backus testified that Shea repeatedly disobeyed lawful orders they gave pursuant to their official duties.  Officer Auderer testified that he repeatedly ordered Shea to remove his hands from his pockets, to keep his hands where he could see them, and to remain in place.  He further testified that Shea repeatedly ignored these orders.  Officer Backus provided similar testimony.  Viewing this testimony in the light most favorable to the State, "any rational trier of fact could have found guilt beyond a reasonable doubt."  Salinas, 119 Wn.2d at 201; see also Steen, 164 Wn. App. at 800-01 ("a person may commit obstruction by willfully disobeying a lawful police order in a manner that hinders, delays, or obstructs the officer in the performance of his or her duties").  Sufficient record evidence supports Shea's obstruction conviction.

Search of the Wallet

Next, Shea argues the trial court erred when it failed to exclude the evidence discovered in his wallet.  He contends Officer Auderer lacked any legal authority to search the wallet because it posed no safety or evidentiary concern and was in the possession of a third party.  We conclude that the search was valid because Shea voluntarily abandoned the wallet during the seizure.[2]

---

[2] The State argues we should decline to address this issue because he failed to claim the error below.  See RAP 2.5(a).  Indeed, Shea never sought to exclude the evidence from his wallet, and he has failed to assert that this error falls into any

Both State and Federal Constitutions prohibit unreasonable searches. See Wash. Const. art. I § 7; U.S. Const. amend IV. A warrantless search is unconstitutional unless it falls under one of "'a few jealously guarded exceptions.'" State v. Samalia, 186 Wn. App. 224, 228, 344 P.3d 722 (2015) (quoting State v. MacDicken, 179 Wn.2d 936, 940, 319 P.3d 31 (2014)). Two exceptions apply here.

First, a police officer may search voluntarily abandoned property without a warrant or probable cause. State v. Evans, 159 Wn.2d 402, 408, 150 P.3d 105 (2007) ("Needing neither a warrant nor probable cause, law enforcement officers may retrieve and search voluntarily abandoned property without implicating an individual's rights under the Fourth Amendment or under article I, section 7 of our state constitution." (quoting State v. Reynolds, 144 Wn.2d 282, 287, 27 P.3d 200 (2001)). Whether an individual has voluntarily abandoned property depends "upon a combination of act and intent." Evans, 159 Wn.2d at 408. "Intent may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment." State v. Dugas, 109 Wn. App. 592, 595, 36 P.3d 577 (2001). The main question is "whether the defendant in leaving the property has relinquished her reasonable expectation of privacy so that the search and seizure is valid." Dugas, 109 Wn. App. at 595 (quoting United States v. Hoey, 983 F.2d 890, 892-93 (8th Cir. 1993)).

The record here shows that Shea voluntarily abandoned his wallet. Officer Shea testified that, while he was attempting to detain him, Shea attempted to empty out

---

exception under RAP 2.5(a). Regardless, as discussed below, we conclude the search was valid.

everything in his pockets. This included throwing his wallet onto his yard. Shea also admitted to abandoning his wallet during trial: "I took my wallet—it was dangling on the chain. I took it and tossed it into my yard, which was where I was at." RP (March 27, 2014) at 257. One of Shea's friends took a brief cell phone video during the incident. A transcript of the video shows that after Shea threw his wallet he said, "here, Dave." Exhibit (Ex.) 1 at 1. But whether Shea was simply throwing his wallet on the ground or trying to give it to another person, in either case it is reasonable to infer that he voluntarily relinquished his reasonable expectation of privacy regarding the wallet. Officer Auderer therefore was permitted to search the wallet without a warrant or probable cause. Evans, 159 Wn.2d at 408-09.

A second exception to the warrant requirement applies here. Under an extension to the incident to arrest exception—the "time of arrest" rule—after a valid arrest, a police officer may search "those personal articles in the arrestee's actual and exclusive possession at or immediately preceding the time of arrest." State v. Byrd, 178 Wn.2d 611, 623, 310 P.3d 793 (2013). The officer need not show that "the search was motivated by particularized concerns for officer safety or evidence preservation." Byrd, 178 Wn.2d at 614. For example, in Byrd, the court held that the "time of arrest" rule allowed a police officer to search a purse on the defendant's lap when she was detained but was placed on the ground nearby prior to her arrest. Byrd, 178 Wn.2d at 625 ("because Byrd's purse was on her lap at the time of her arrest, it was an article of her person.").

Here, it is undisputed that Shea had actual and exclusive possession either at or immediately preceding the time of the arrest. Officer Auderer identified himself as a

police officer and told Shea that he was under arrest. Shortly after, Shea abandoned his wallet. At trial, Shea admitted he owned the wallet and threw it as he was being detained. Further, it is also undisputed that the arrest was valid. Officer Auderer had probable cause to arrest Shea because he personally witnessed the hit and run incident with Manning. See State v. Ward, 24 Wn. App. 761, 766, 603 P.2d 857 (1979) ("Probable cause for making a warrantless arrest exists when the facts and circumstances are such as to warrant a prudent or cautious man in believing that the suspect had committed or is committing an offense."). The trial court properly admitted the evidence from the wallet because Officer Auderer's search of Shea's wallet was a valid search incident to arrest. See Byrd, 178 Wn.2d at 625.

Shea cites State v. Boyce, 52 Wn. App. 274, 758 P.2d 1017 (1988).[3] Boyce is unpersuasive. In Boyce, the defendant was pulled over for speeding. Boyce, 52 Wn. App. at 275. After a license and registration check, the officer discovered Boyce's outstanding warrant and the car he was driving had been reported stolen. Boyce, 52 Wn. App. at 275. A second officer arrived and drove Boyce to the King County Jail. Boyce, 52 Wn. App. at 275. Another officer searched the car and found a briefcase containing cocaine. Boyce, 52 Wn. App. at 276. The court held the search incident to arrest exception inapplicable: "once Boyce was removed from the scene, there simply were no special circumstances present that justified a warrantless vehicle search as there was no possibility that Boyce could destroy evidence or grab a weapon." Boyce, 52 Wn. App. at 279.

---

[3] We note that, like his previous argument, Shea relies heavily on an unpublished opinion from this court in violation of GR 14.1. We do not consider his argument insofar as it relies on this case.

Boyce is distinguishable. First, because the briefcase in Boyce's backseat was not part of his person, the officers must justify the search with either safety or evidentiary concerns. Boyce, 52 Wn. App. at 279. Shea's wallet was part of his person, so no justification by Officer Auderer was necessary for the search. As the Byrd court explained, "The search incident to arrest exception encompasses two distinct rationales. A search of the arrestee's immediate area must be justified by concerns for officer safety or evidence preservation, while a search of the arrestee's person and articles of his or her person is justified by the authority of a lawful arrest." Byrd, 178 Wn.2d at 625. Second, Boyce was decided 19 years before Byrd, which expressly permits the circumstances here—after a valid arrest, a police officer may search a personal article in the arrestee's "actual and exclusive possession at or immediately preceding the time of arrest" even in the absence of safety or evidentiary concerns. Byrd, 178 Wn.2d at 623. Boyce does not control here. Officer Auderer's warrantless search of Shea's wallet constituted a valid search incident to arrest.

Self-Incriminating Statements

Shea argues the court erred when it admitted self-incriminating statements contained in a cell phone video depicting Shea's interaction with police officers. In the audio portion, Shea states "I didn't fucking hit him hard enough. He bumped into my car." Ex. 1 at 9. He contends Officer Auderer coerced this statement and thereby violated his Fifth Amendment privilege against self-incrimination. We conclude that the trial court correctly determined the statement was voluntary and therefore properly admissible.

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.; see also Wash. Const. art. I § 9. To preserve an individual's right against compelled self-incrimination, police must inform a suspect of his rights before custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The parties agree that Shea received no Miranda warnings before he made the self-incriminating statement on the cell phone video.

However, a defendant's Miranda rights attach only when the defendant is subject to custodial interrogation. The State seems to concede that Shea was in custody. But the record shows that Shea was not subject to interrogation within the meaning of Miranda.

Interrogation occurs "whenever a person in custody is subjected to either express questioning or its functional equivalent [such as] any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." State v. Wilson, 144 Wn. App. 166, 184, 181 P.3d 887 (2008) (quoting Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)).

Here, the record shows that Officer Auderer did not subject Shea to express questioning or its functional equivalent. A transcript of the cell phone video reveals that Shea disputed the legitimacy of his arrest. In response, Officer Auderer explained why he was arresting Shea. Upon hearing Officer Auderer's explanation, Shea made the self-incriminating statement at issue:

| | |
|---|---|
| [Officer Auderer]: | Is [the victim] gone? Okay. Well, he's [Shea] still going [under arrest]. |
| . . . | |
| [Shea]: | For what? |
| [Officer Auderer]: | I'll do the—for resisting and obstructing, first off. |
| [Shea]: | No, no, no, no. |
| [Officer Auderer]: | And fleeing the scene of an accident. |
| [Shea]: | I did not. He [the victim] walked off and said what the fuck— |
| [Officer Auderer]: | I saw him motion for you to stop. |
| [Shea]: | --and I said what the fuck myself. |
| [Officer Auderer]: | I saw him motion for you to stop. |
| [Shea]: | No. He said what the fuck and walked off to the sidewalk. He said nothing about motioning. I didn't fucking hit him hard enough. He bumped into my car. |

Ex. 1 at 8-9. The transcription shows that Officer Auderer was responding to Shea's request to explain the reason for his arrest. Justifying the circumstances of an arrest is a "normally attendant" aspect of taking a suspect into custody, and Officer Auderer could have reasonably believed his explanation was unlikely to elicit an incriminating response. State v. Wilson, 144 Wn. App. at 184. Therefore, these comments were not express questions or their functional equivalent. Wilson, 144 Wn. App. at 184. Accordingly, Shea's Miranda rights did not apply.

But even if Shea's Miranda rights applied, his statement is nevertheless admissible because it was voluntary. A trial court may admit a suspect's self-incriminating statement where the "inculpatory statement, though technically in violation of Miranda, was voluntary." State v. Baruso, 72 Wn. App. 603, 610, 865 P.2d 512 (1993) (quoting Oregon v. Elstad, 470 U.S. 298, 318, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985)). To determine whether a self-incriminating statement was voluntary, courts employ a totality-of-the-circumstances test. State v. Unga, 165 Wn.2d 95, 101, 196 P.3d 645 (2008). The test "specifically applies to determine whether a confession was

coerced by any express or implied promise or by the exertion of any improper

influence." Unga, 165 Wn.2d at 101.

Here, the trial court concluded that Shea's statements on the cell phone video

were voluntary due to the lack of any evidence of improper influence:

> The Court will find that [the statements] were given voluntarily; that
> there were no promises or threats made to the defendant to get him to say
> anything about this particular topic, that they were spontaneous; they
> weren't the product of a[n] interrogation of any type. He was in custody at
> the time, but again, they were voluntary, so—and spontaneous, so the
> Court will allow that portion of the tape to be heard by the jury.

RP (March 26, 2014) at 127.[4] As discussed above, the record supports the trial court's

conclusion that Shea's statements on the cell phone video were voluntary. Officer

Auderer said nothing suggestive of a custodial interrogation, nor did he offer improper

promises or threats. The trial court properly admitted the statement.

<u>Ineffective Assistance of Counsel</u>

Finally, Shea argues he was deprived of his constitutional right to effective

assistance of counsel. Shea contends his trial counsel was ineffective by (1) failing to

move to suppress the contents of his wallet, (2) failing to move to dismiss the

obstruction charge, (3) failing to move to suppress his earlier confession to Officer

Auderer, and (4) failing to move to strike juror 7.

We review claims for ineffective assistance of counsel de novo. State v.

Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). "To prevail on a claim of

ineffective assistance of counsel, counsel's representation must have been deficient,

---

[4] Our review is limited to the court's oral ruling following the CrR 3.5 hearing. No
written findings of fact or conclusions of law as require by CrR 3.5(c) is found in the
record. See Wilson, 144 Wn. App. at 183.

-13-

and the deficient representation must have prejudiced the defendant." State v. Aho, 137 Wn.2d 736, 745, 975 P.2d 512 (1999); Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "To establish ineffective representation, the defendant must show that counsel's performance fell below an objective standard of reasonableness. To establish prejudice, a defendant must show that but for counsel's performance, the result would have been different." State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002) (citation omitted). Failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700. For the reasons discussed below, Shea has failed to show that counsel's performance was either deficient or prejudicial.

### Counsel's Failure to Move to Suppress the Contents of Shea's Wallet

Shea has failed to show that counsel was ineffective when he failed to move to suppress the contents of the wallet.

When a defendant's claim for ineffective assistance of counsel is based on counsel's failure to make a motion to suppress evidence, the defendant "must show that the trial court likely would have granted the motion if made." State v. McFarland, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995). As discussed above, the trial court properly admitted the evidence.

### Counsel's Failure to Move to Dismiss the Obstruction Charge

Shea argues that because the State presented no evidence that Shea made a false statement, counsel was ineffective when he failed to move to dismiss the obstruction charge. As discussed above, the State need not present evidence of a false statement to sustain a charge of obstructing a law enforcement officer. The defendant's

conduct alone is sufficient. He fails to establish the trial court would have granted this motion.

### Counsel's Failure to Move to Suppress Shea's Earlier Confession

Shea also argues counsel was ineffective when he failed to move to suppress his earlier confession to Officer Auderer. As discussed above, Shea made a spontaneous, voluntary self-incriminating statement on the cell phone video. Before the video, Officer Auderer testified that Shea made a separate incriminating statement when he first confronted him about the hit and run incident. Officer Auderer stated that after he followed Shea to his house, he identified himself as a police officer and told him he was under arrest for hitting a pedestrian. Shea responded by saying something to the effect of "I barely hit that guy. I barely hit him. He wasn't even hurt." RP (March 27, 2014) at 154.

As discussed above, this confession was a voluntary, spontaneous statement. It was not the product of questioning or its functional equivalent. The confession was admissible. Unga, 165 Wn.2d at 101. Similar to his other claims, Shea fails to show that the trial court would likely have granted a motion to suppress the confession. McFarland, 127 Wn.2d at 334.

### Counsel's Failure to Seek Removal of Juror 7

Finally, Shea contends counsel was ineffective when he failed to seek removal of juror 7. Early in the trial, juror 7 realized he works with the son of one of the witnesses. The juror had no prior knowledge of the case, and he told the bailiff that it would make no difference in how he understood the case. Neither the State nor defense counsel

asked to question the juror further about whether he would be able to serve as an impartial juror. Shea contends this failure prejudiced him.

But Shea cannot show that counsel's decision was either deficient or caused prejudice. Shea fails to cite either the record or any legal authority. We may decline to address this claim. See RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (argument unsupported by reference to the record or citation to authority will not be considered).

In any event, we are reluctant to find ineffective assistance of counsel except in the most extreme cases. "[S]crutiny of counsel's performance is highly deferential and courts will indulge in a strong presumption of reasonableness." State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). Counsel's performance is not deficient if any legitimate tactical reason supports the challenged conduct. McFarland, 127 Wn.2d at 336. Here, Shea has failed to overcome the strong presumption that counsel acted reasonably when he declined to seek removal of juror 7. Counsel may have reasonably concluded that despite the juror's indirect relationship to one of the witnesses, the juror's other qualities justified retaining the juror.

Shea also fails to show that the juror's removal would have changed the outcome. His ineffective assistance of counsel claim fails.

## CONCLUSION

For the foregoing reasons, we affirm the judgment and sentence.

WE CONCUR: