IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33777-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| BRIAN PALACIOS-FARIAS | ) | |
| aka BRIAN FARIAS | ) | |
| aka BRIAN PALACIOS | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Brian Palacios-Farias was convicted of one count of residential burglary and one count of second degree theft. Mr. Palacios-Farias appeals arguing the trial court erred when it denied his suppression motion. Finding no error, we affirm.

FACTS[1]

Police were dispatched to a local trailer park after a report of three suspicious males wearing black clothing and facemasks. Upon arrival, one of the officers noticed a silver Ford Mustang. From a distance, the officer observed someone enter the passenger

_____

[1] Neither party has assigned error to any of the trial court's findings of fact making the findings verities on appeal. *State v. Flores*, 186 Wn.2d 506, 509 n.2, 379 P.3d 104 (2016). The facts here are drawn from the trial court's unchallenged findings of fact.

side of the vehicle. The vehicle immediatly left the scene. After an attempted pursuit, and search, the Mustang was located a short distance away and noted to have California license plates and distinctive chrome wheels. The vehicle appeared to be unoccupied. After a brief investigation, the Mustang again went missing. It was then located about a half mile from the trailer park, at an apartment complex, parked in front of apartment A-104. The officers could see the curtains to apartment A-104 open and close repeatedly as if someone were looking out. Dispatch confirmed that the Mustang was associated with apartment A-104.

At this point, the officers approached apartment A-104 from the front and the back. As one of the officers approached the backyard of the apartment he heard the back door open followed by a "thump" or "thud" sound. Report of Proceedings (RP) (May 8, 2015) at 227-29; Clerk's Papers (CP) at 55. The officer then observed Mr. Palacios-Farias run from the fence in the rear of the yard toward the open back door of the apartment. The officer approached Mr. Palacios-Farias, ordered him to the ground, and handcuffed him. The officer explicitly told Mr. Palacios-Farias he was not under arrest as the officers needed to investigate further. When asked, Mr. Palacios-Farias stated he did not live in the apartment.

2

The officers believed they may have interrupted a residential burglary and did not know if Mr. Palacios-Farias or other unidentified suspects might be armed. One of the officers identified himself as police and called for anyone else in the apartment to come out and identify themselves. There was no response. Eventually several individuals slowly trickled out of the apartment. One was a juvenile male dressed in dark clothing who came to the front door. Another juvenile male emerged from a rear bedroom. This second male, as well as Mr. Palacios-Farias, had duct tape on the soles of his shoes, a common technique used by burglars to avoid leaving shoe prints at the scene. As the police continued their investigation, two more individuals, the tenant of the apartment and her daughter slowly emerged from other sections of the apartment.

As the individuals in the apartment revealed themselves, one of the officers jumped over the fence in the rear of the backyard. The officer located a black backpack on the ground near the fence. The backpack was dry but the ground was wet. The officers asked the two juvenile males and Mr. Palacios-Farias who owned the backpack. Nobody claimed it. The officers opened the backpack and discovered several school-related items with one suspect's (not Mr. Palacios-Farias's) name on them, possible stolen electronic items, and duct tape. All three boys continued to deny ownership of the backpack. One of the officers then informed the boys they were not yet under arrest, but

3

he was going to read them their *Miranda*[2] rights. All three acknowledged they understood their rights and then made statements. After the statements, the boys were placed under formal arrest for possession of stolen property. In total, the boys were handcuffed for about five to ten minutes.

Mr. Palacios-Farias was charged with one count of residential burglary and one count of second degree theft. Prior to trial he filed a joint CrR 3.5 and CrR 3.6 motion to suppress his pre-*Miranda* statements to the officers and the search of the backpack. The motion was denied. Mr. Palacios-Farias was tried to the bench and found guilty. He appeals.

## ANALYSIS

Mr. Palacios-Farias argues the trial court should have granted his CrR 3.5 and CrR 3.6 motions. As the trial court's findings of fact are not challenged, our review is limited to the conclusions of law. *State v. Cain*, 108 Wn. App. 542, 547-48, 31 P.3d 733 (2001). Conclusions of law pertaining to the denial of a CrR 3.5 or CrR 3.6 motion are reviewed de novo to determine whether they are supported by the trial court's findings of fact. *State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013) (CrR 3.5); *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009) (CrR 3.6).

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4

*Statements to officers—CrR 3.5 motion*

Mr. Palacios-Farias argues he was under arrest the moment he was placed in handcuffs and should have been given *Miranda* warnings at that time. Prior to being given *Miranda* warnings, Mr. Palacios-Farias denied residence at apartment A-104 and denied ownership of the backpack. Since no warnings were given he argues these pre-*Miranda* statements should be suppressed. The State asserts this was a lawful *Terry*[3] stop and Mr. Palacios-Farias was not placed under formal arrest until the officers explicitly told him so. Thus, any pre-*Miranda* statements need not be suppressed because no *Miranda* warnings were actually required. We agree with the State.

Warrantless seizures are generally presumed to be unconstitutional. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008); *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). The burden is on the State to prove that an exception to the warrant requirement applies. *State v. Hendrickson*, 129 Wn.2d 61, 71, 917 P.2d 563 (1996). One such exception is a *Terry* stop. *State v. Ladson*, 138 Wn.2d 343, 349-50, 979 P.2d 833 (1999). A *Terry* stop permits an officer to briefly detain and question a person reasonably suspected of criminal activity. *State v. Smith*, 102 Wn.2d 449, 452, 688 P.2d 146 (1984). An officer must have "a reasonable,

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

articulable suspicion, based on specific, objective facts, that the person seized has committed or is about to commit a crime." *Gatewood*, 163 Wn.2d at 539 (internal quotation marks omitted) (quoting *State v. Duncan*, 146 Wn.2d 166, 172, 43 P.3d 513 (2002)); *see also Terry*, 392 U.S. at 21. The police first encountered Mr. Palacios-Farias trying to dispose of possible evidence behind an apartment associated with a distinctive vehicle that eluded the police at the scene of a suspected burglary a very short time earlier. The officers also noted someone within the apartment observing their actions in a suspicious manner. The facts here are more than sufficient to create a reasonable and articulable suspicion that Mr. Palacios-Farias had committed a crime.

Mr. Palacios-Farias further argues this was never a *Terry* stop because he was placed in handcuffs and was thus under arrest. He is incorrect. Although a *Terry* stop is ordinarily limited to a frisk for weapons and brief questioning, handcuffing a suspect is permissible if the officers can point to a reasonable fear of danger. *State v. Mitchell*, 80 Wn. App. 143, 145-46, 906 P.2d 1013 (1995). The scope of intrusion permitted varies based on the totality of the circumstances in each individual case. *State v. Wheeler*, 108 Wn.2d 230, 245-46, 737 P.2d 1005 (1987) (Pearson, C.J., dissenting). The officers had evidence of a possible burglary at the trailer park and suspected they interrupted a residential burglary at the apartment. The officers knew from their training that burglary

6

tools could be used as weapons, and that there were at least two other suspects possibly in the apartment. The officers received no response when they called for everyone in the apartment to come out and identify themselves, and the persons in the apartment then slowly revealed themselves. Based on these facts, the officers had a reasonable fear of danger that justified handcuffing Mr. Palacios-Farias as they investigated. The fact that he was placed in handcuffs did not turn this *Terry* stop into a formal arrest.

Mr. Palacios-Farias last argues this could not have been a *Terry* stop because the officers exceeded the permissible length of such a stop. Mr. Palacios-Farias was only in handcuffs for about five to ten minutes total. He was in handcuffs for even less time than that before he received the *Miranda* warning. There is no rigid time limitation on *Terry* stops. *United States v. Sharpe*, 470 U.S. 675, 685, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985). A lawful *Terry* stop is limited in scope and duration to fulfilling the investigative purpose of the stop. *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). As discussed above, the officers had legitimate safety concerns because they did not know the total number of suspects in the apartment and reasonably believed any suspects could be armed. Those suspicions were further aroused and ultimately confirmed when the officers discovered and searched the backpack. *See id.*

Given the officers' reasonable safety concerns, the strong indications Mr. Palacios-Farias had committed a crime, and the very brief amount of time he was in handcuffs, any intrusion on Mr. Palacios-Farias's freedom was justifiable. Accordingly, Mr. Palacios-Farias's statements denying residence at apartment A-104 and ownership of the backpack were made during a lawful *Terry* stop. The CrR 3.5 motion was properly denied.

*Contents of backpack—CrR 3.6 motion*

Mr. Palacios-Farias next argues the trial court erred when it ruled no warrant was required to search the backpack because it had been abandoned. He argues he had a reasonable expectation of privacy in the backpack even though it was thrown over the fence.[4] We disagree.

Officers may retrieve and search voluntarily abandoned property without probable cause or a warrant. *State v. Evans*, 159 Wn.2d 402, 407-09, 150 P.3d 105 (2007). Whether property has been voluntarily abandoned is determined by evaluating the intent and actions of the defendant to ascertain whether the defendant has a reasonable expectation of privacy despite leaving the property. *Id.* The burden shifts to the defendant to show a reasonable expectation of privacy still existed and there was no

---

[4] Mr. Palacios-Farias may not have had automatic standing to contest the search of the backpack. *See State v. Wisdom*, 187 Wn. App. 652, 664-65, 349 P.3d 953 (2015). Nevertheless, because the State does not address standing, neither do we.

8

abandonment. *Id.* One of the officers observed Mr. Palacios-Farias running from the fence in the back of the apartment immediately after hearing a "thump" or "thud" sound. RP (May 8, 2015) at 227-29; CP at 55. Upon inspection, the officers discovered a dry backpack on the wet ground just beyond the fence, suggesting the backpack was recently dropped or thrown. Mr. Palacios-Farias never claimed ownership of the backpack at any time despite being asked twice. Further, "a critical factor in determining whether abandonment has occurred is the status of the area where the searched item was located." *State v. Samalia*, 186 Wn. App. 224, 229, 344 P.3d 722 (2015), *aff'd*, 186 Wn.2d 262, 375 P.3d 1082 (2016). Nothing in the record indicates Mr. Palacios-Farias had a privacy interest in the area where the backpack was found. Last, the simple fact that the backpack is a backpack does not automatically give him a reasonable privacy interest in its contents without some showing he used it for personal reasons. *See State v. Kealey*, 80 Wn. App. 162, 170, 907 P.2d 319 (1995) (stating there is a reasonable privacy interest in traditional repositories of personal belongings). Mr. Palacios-Farias has offered no evidence the backpack was his personal property. *See Evans*, 159 Wn.2d at 407-09. The trial court properly concluded Mr. Palacios-Farias had voluntarily abandoned the backpack and no warrant was required to search it. The CrR 3.6 motion was properly denied.

No. 33777-4-III
*State v. Palacios-Farias*

## CONCLUSION

Based on the foregoing, we affirm the trial court's suppression and disposition orders.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____   _____
Lawrence-Berrey, A.C.J.         Siddoway, J.

10