FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 2 8 2016

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on July 28, 2016

Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 91532-6 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| ADRIAN SUTLEJ SAMALIA, | ) | |
| | ) | Filed JUL 2 8 2016 |
| Petitioner. | ) | |
| | ) | |

WIGGINS, J.—Petitioner Adrian Sutlej Samalia fled on foot from a stolen vehicle during a lawful traffic stop, leaving his cell phone behind in the vehicle. After Samalia successfully escaped, the police searched the cell phone without a warrant and made contact with one of the numbers stored in the cell phone. That contact led to Samalia's identification as the owner of the phone and driver of the stolen vehicle. The State used this evidence against Samalia at trial. Samalia contends that his right to be free from unreasonable searches was violated when the State introduced the identification evidence derived from the search of his cell phone. We hold that although Samalia initially had a constitutionally protected privacy interest in the cell phone and its data, he abandoned that interest when he voluntarily left the cell phone in a stolen vehicle while fleeing from a lawful traffic stop. Accordingly, we affirm the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

Yakima Police Officer Ryan Yates observed what he believed to be a stolen vehicle while on patrol. He confirmed with dispatch that the vehicle was stolen and began to follow it. Eventually, the driver stopped, got out of the vehicle, and faced Officer Yates. Officer Yates gave the driver various commands, but the driver did not obey and ran away. Officer Yates attempted to chase after the driver, but the driver successfully escaped.

Failing to apprehend the driver, Officer Yates returned to the stolen vehicle and began to search it without a warrant. Officer Yates found a cell phone somewhere near the vehicle's center console, but he did not know to whom it belonged. He then began calling some of the contacts listed in the cell phone.

From the cell phone's contacts, Officer Yates called Deylene Telles. He told Telles that he had found a cell phone and wanted to return it to its owner. Telles agreed to meet at a designated location. When Telles arrived at that location, Yakima Police Sergeant Henne immediately arrested her. Sergeant Henne seized Telles' cell phone and used the cell phone recovered by Officer Yates to call it. Telles' cell phone displayed Samalia's name and photo, identifying him as the caller. Officer Yates then looked up Samalia's photo in a law enforcement database and identified Samalia as the driver who fled from the stolen vehicle.

On these facts, the State charged Samalia with possession of a stolen vehicle. Samalia moved to suppress the cell phone evidence, arguing that the officers violated his constitutional rights when they seized and searched his cell phone with neither a warrant nor a valid exception to the warrant requirement. The State responded that

2

the warrantless search was valid under the abandonment doctrine. The trial court denied Samalia's motion, agreeing with the State that no warrant was required under the abandonment doctrine. The trial court held that Samalia voluntarily abandoned any privacy interest that he had in the cell phone by leaving it in the stolen vehicle, which he also voluntarily abandoned, while fleeing from Office Yates. After denying Samalia's suppression motion and subsequent motion for reconsideration, the trial court found Samalia guilty as charged in a bench trial.

Samalia appealed, and the Court of Appeals Division Three affirmed the trial court in a split decision. *State v. Samalia*, 186 Wn. App. 224, 226, 344 P.3d 722 (2015). The Court of Appeals affirmed for three reasons: (1) the abandonment doctrine applied, (2) the exigent circumstances doctrine applied, (3) and the attenuation doctrine applied. Samalia then sought this court's discretionary review, which we granted.

## ANALYSIS

The issue before us is whether Samalia had a constitutionally protected privacy interest in his cell phone and, if so, whether the police were justified in searching the cell phone without a warrant. We conclude that Samalia did initially have a constitutionally protected privacy interest in his cell phone under the Washington Constitution, but he lost that interest when he "voluntarily abandoned the cell phone located in the vehicle" while fleeing from police. Clerk's Papers at 31 (Finding of Fact IV); WASH. CONST. art. I, § 7.

Washington's Constitution states that "[n]o person shall be disturbed in his private affairs . . . without authority of law." WASH. CONST. art. I, § 7. Article I, section

3

7 encompasses the privacy expectations protected by the Fourth Amendment to the United States Constitution and, in some cases, may provide greater protection than the Fourth Amendment because its protections are not confined to the subjective privacy expectations of citizens. *State v. Myrick*, 102 Wn.2d 506, 510-11, 688 P.2d 151 (1984). Under article I, section 7—in its protection of "private affairs"—"a search occurs when the government disturbs 'those privacy interests which citizens of this state *have held, and should be entitled to hold*, safe from government trespass absent a warrant.'" *State v. Hinton*, 179 Wn.2d 862, 868, 319 P.3d 9 (2014) (quoting *Myrick*, 102 Wn.2d at 511)). "The 'authority of law' required by article I, section 7 [to search or seize an item classified as a 'private affair'] is a valid warrant unless the State shows that a search . . . falls within one of the jealously guarded and carefully drawn exceptions to the warrant requirement." *Id.* at 868-69.

Our private affairs analysis leads to the conclusion in Part II of this opinion that cell phones, including the information that they contain, are "private affairs" under article I, section 7. As a private affair, the police may not search a cell phone without a warrant or applicable warrant exception.

However, citizens may lose their constitutional protections in a private affair under the abandonment doctrine. In Part III, we conclude that the abandonment doctrine applies to cell phones, and in Part IV, we affirm the trial court's conclusion that Samalia abandoned his cell phone. Finally, in Part V, we reverse the Court of Appeals rulings on the exigent circumstances and attenuation doctrines.

4

I.   Standard of review

We review constitutional issues de novo. *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012). When a trial court denies a motion to suppress, we also review that court's conclusions of law de novo. *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009). Whether Samalia had and then abandoned a privacy interest in his cell phone and its data is a mixed question of law and fact because we are required to apply legal principles to a particularized set of factual circumstances. *See In re Det. of Anderson*, 166 Wn.2d 543, 555, 211 P.3d 994 (2009); *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 687, 167 P.3d 1112 (2007). "Analytically, resolving a mixed question of law and fact requires establishing the relevant facts, determining the applicable law, and then applying that law to the facts." *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 403, 858 P.2d 494 (1993). For mixed questions of law and fact, unchallenged factual findings are verities on appeal and we review application of those facts to the law de novo. *In re Det. of Anderson*, 166 Wn.2d at 555.

II.  Cell phones and the information they contain are "private affairs" under article I, section 7 of the Washington Constitution

We hold that cell phones and the information contained therein are private affairs because they may contain intimate details about individuals' lives, which we have previously held are protected under article I, section 7. In determining whether something is a private affair (meaning "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from government trespass absent a warrant," *see Myrick*, 102 Wn.2d at 511), we consider both "the nature and extent of the information which may be obtained as a result of the governmental conduct"

5

and the historical protection afforded to the interest asserted.[1] *State v. Miles*, 160 Wn.2d 236, 244, 156 P.3d 864 (2007); *see also Hinton*, 179 Wn.2d at 868-69; *State v. Jorden*, 160 Wn.2d 121, 126, 156 P.3d 893 (2007).[2]

*A. Cell phones may contain vast amounts of intimate, personal information*

For the private affairs analysis under article I, section 7, we first "look at the 'nature and extent of the information which may be obtained as a result of the government conduct.'" *Hinton*, 179 Wn.2d at 869 (quoting *Miles*, 160 Wn.2d at 244). A government search of a cell phone has the potential to reveal a vast amount of personal information. The United States Supreme Court recently described the intimate and personal details that cell phones may contain in *Riley v. California*, __ U.S. __, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014). The *Riley* Court's detailed analysis on the nature and extent of private information that cell phones may contain is persuasive for our private affairs analysis.

---

[1] We also consider laws supporting the interest asserted, including statutes and analogous case law. *State v. Athan*, 160 Wn.2d 354, 366, 158 P.3d 27 (2007). Finally, we look to the reasonableness of the interest asserted. *Id.* (voluntary exposure to the public can negate an asserted privacy interest); *State v. Day*, 161 Wn.2d 889, 894, 168 P.3d 1265 (2007) (evidence in open or plain view will not be excluded).

[2] Under the Fourth Amendment, the search warrant requirement attaches to items in which individuals have a reasonable expectation of privacy. This is analyzed under two questions: (1) whether the individual, by his or her conduct, has exhibited an actual (subjective) expectation of privacy and (2) whether the individual's subjective expectation of privacy is "'one that society is prepared to recognize as "reasonable."'" *Smith v. Maryland*, 442 U.S. 735, 739-41, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979) (quoting *Katz v. United States*, 389 U.S. 349, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (Harlan, J., concurring)). However, we do not reach the question of whether individuals have privacy interests in their cell phones under the Fourth Amendment because we conclude that they do under the more protective standard of article I, section 7. *See State v. Patton*, 167 Wn.2d 379, 396 n.9, 219 P.3d 651 (2009) (stating that we do not reach Fourth Amendment arguments when the article I, section 7 provides "independent and adequate state grounds" to resolve the issue).

The *Riley* Court observed that "many [cell phones] are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Id.* at 2489. The Court then continued on the ramifications of the large data storage capacities of cell phones: a cell phone typically contains far more personal information than a person would normally carry in written form; searching a cell phone discloses prior searches for information by the cell phone owner, suggesting private facts about the owner; and cell phone applications, or apps, collect information on specific subjects.
*Id.* at 2489-90.

As described in *Riley*, cell phones may contain many intimate details of a person's life. This is certainly sufficient to satisfy the first step of the private affairs inquiry—that the search may reveal intimate or discrete details of a person's life. We turn then to the second step of the inquiry—whether we have historically protected this information under article I, section 7.

### B. We have historically protected the types of information now contained in cell phones as "private affairs" under article I, section 7

Cell phones store information that we have previously held to be protected under article I, section 7 as private affairs. Our historical treatment of these types of information supports finding that that cell phones and their contents are private affairs. For example, cell phones track call logs. In *State v. Gunwall*, 106 Wn.2d 54, 67-69, 720 P.2d 808 (1986), we held that a warrant is required under article I, section 7 before the police may search telephone records of an individual that the police received from

7

the telephone company. Cell phones track GPS (global positioning systems) data. In *State v. Jackson*, 150 Wn.2d 251, 264, 76 P.3d 217 (2003), we held that a warrant is required under article I, section 7 before the police may attach a GPS device to a citizen's vehicle. Cell phones track bank information. In *Miles*, 160 Wn.2d at 244-45, we held that a warrant is required under article I, section 7 before the police may search banking records. Cell phones can even track hotel registry information, which we also held was a private affair under article I, section 7 in *Jorden. See* 160 Wn.2d at 130.

Most recently, we recognized that text messages are private affairs. *See Hinton*, 179 Wn.2d at 877-78. In *Hinton*, we held that text messages were private affairs because viewing the messages may expose "'a wealth of detail about [a person's] familial, political, professional, religious, and sexual associations.'" *Id.* at 869 (alteration in original) (quoting *United States v. Jones*, __ U.S. __, 132 S. Ct. 945, 955, 181 L. Ed. 2d 911 (2012) (Sotomayor, J., concurring)). We also recognized that text messages are no different from other historically protected means of communication, especially phone calls and other electronic communications. *Id.* at 869-70 ("Text messages can encompass the same intimate subjects as phone calls, sealed letters, and other traditional forms of communication that have historically been strongly protected under Washington law.").

Given the intimate information that individuals may keep in cell phones and our prior case law protecting that information as a private affair, we hold that cell phones, including the data that they contain, are "private affairs" under article I, section 7. As

private affairs, police may not search cell phones without first obtaining a warrant unless a valid exception to the warrant requirement applies.

Therefore, we hold that Samalia initially had a constitutionally protected privacy interest in his cell phone to the extent that the officers could not have searched his cell phone without a search warrant or the application of an exception to the warrant requirement. But as we next discuss, Samalia abandoned his privacy interest in his cell phone when he left it in a stolen vehicle while fleeing a lawful traffic stop.

III.    The abandonment doctrine applies to Samalia's case

Samalia argues that the abandonment doctrine should not apply to cell phones or that there should be at least a heightened showing of intent to abandon. We hold that the abandonment doctrine applies to cell phones and that the trial court appropriately found that Samalia abandoned his cell phone.

Under the common law, a person loses normal privacy interests in property upon abandonment. *See State v. Kealey*, 80 Wn. App. 162, 170-72, 907 P.2d 319 (1995). The abandonment doctrine is not rooted in any obligation by law enforcement to find the owner of property. *See State v. Evans*, 159 Wn.2d 402, 408, 150 P.3d 105 (2007) ("'[L]aw enforcement officers may retrieve and search voluntarily abandoned property without implicating an individual's rights under the Fourth Amendment or under article I, section 7 of our state constitution.'" (quoting *State v. Reynolds*, 144 Wn.2d 282, 287, 27 P.3d 200 (2001))). In this sense, voluntarily abandoned property is different from lost or mislaid property, in which the owner maintains a privacy interest in the property and the finder may have an obligation as a bailee to seek out the owner to return the property. *Kealey*, 80 Wn. App. at 171-73. Thus, when an

9

individual flees from law enforcement and leaves a cell phone behind in a stolen vehicle, a trial court may find that the cell phone is no less abandoned than any other item that was also left in the stolen vehicle.

Based on the amount of private information that cell phones may hold, Samalia argues that article I, section 7 requires that cell phones either be excluded from the abandonment doctrine or that we should require at least a heightened showing of intent to abandon.[3] These arguments rely on *Hinton* and *Riley* as examples of courts' limitations on the government's authority to search cell phones under an exception to the warrant requirement. However, *Riley* and *Hinton* do not create exceptions for cell phones. Rather, the *Hinton* and *Riley* rulings demonstrate that no special rules are necessary for cell phones because they can be analyzed under established rules.

In *Riley*, the United States Supreme Court held that the justifications for the "search incident to arrest" exception to the warrant requirement are not implicated in cell phone searches. 134 S. Ct. at 2494. Specifically in *Riley*, police arrested an individual and, without a warrant, searched a cell phone that they found in the individual's pants. *Id.* at 2480-81. The United States Supreme Court considered whether the warrantless search of the cell phone was valid under the "search incident to arrest" exception to the warrant requirement. *Id.* at 2482-84. To answer this

---

[3] Amicus American Civil Liberties Union of Washington (ACLU-WA) argues that we should create an exception for cell phones from the abandonment doctrine. ACLU-WA states that if we do not create an exception, we "threaten[] the privacy of anyone who accidentally leaves their phone in a public place—including parks, buses, and ride- or car-sharing services," which is "incompatible with article I, section 7." Amicus Curiae Br. of ACLU-WA at 10. ACLU-WA is incorrect; ACLU-WA fails to recognize the difference between abandoned property and lost or mislaid property. *See Kealey*, 80 Wn. App. at 172-75. ACLU-WA's hypothetical describes lost or mislaid property, which is not subject to the abandonment doctrine. *Id.*

question, the Court clarified the reasons that justify a "search incident to arrest": (1) officer safety and (2) preservation of evidence. *Id.* at 2484. Looking at the nature of a search of a cell phone's information, the Supreme Court held that it did not fit the reasons for the search incident arrest exception to the warrant requirement. The Court first stated that cell phone data cannot itself be used as a weapon to harm an officer. *Id.* at 2485. Second, the Court reasoned that officers could prevent the destruction of potential evidence in the cell phone by merely seizing the cell phone and not searching it immediately without a warrant. *Id.* at 2486-88. Therefore, the Court held that "the search incident to arrest exception does not apply to cell phones." *Id.* at 2494. However, the Court expressly limited its holding to the search incident to arrest exception. *See id.* ("[E]ven though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone.").

In *Hinton*, we analyzed whether an individual loses his or her privacy interest in a text message by sending that message to a third party under principles of voluntary disclosure. *See* 179 Wn.2d at 873-76. We held that an individual does not lose his or her privacy expectations in a sent text message by applying established article I, section 7 principles rather than creating a special exception for cell phones. We reasoned that "incidental exposure of private information in the course of everyday life is distinct from other kinds of voluntary disclosure that extinguish privacy interests under article I, section 7," and that article I, section 7, does not "require individuals to veil their affairs in secrecy and avoid sharing information in ways that have become an ordinary part of life." *Id.* at 875, 874.

11

Neither *Riley* nor *Hinton* can be read for the proposition that the abandonment doctrine should not apply to cell phones or should be limited in its application to cell phones. The *Riley* holding that cell phones may not be searched incident to arrest without a warrant was based on the fact that such cell phone searches do not fall into the particular justifications for the search incident to arrest exception. *Hinton* was predicated on the fact that revealing some information in one's cell phone to third parties as a means of modern communication has become a common practice. But in this case and for the abandonment doctrine, there has been no advancement in technology to cause one to abandon property in stolen vehicles while attempting to flee from police. Moreover, the rationale driving the abandonment doctrine fits cell phone searches.[4] When an individual voluntarily abandons an item, not as a facet of modern communication but to elude the police, that individual voluntarily exposes that item—and all information that it may contain—to anyone who may come across it. Cell phones are no different in this respect than for any other item; the abandonment doctrine applies to all personal property equally.

Therefore, we decline to find an exception to the abandonment doctrine for cell phones. We consider, then, whether the trial court properly found abandonment under these facts.

---

[4] We do not address the use of a cell phone to access remote data or services because this case does not present that question. We leave that issue for another day.

12

IV.   The trial court's finding that Samalia abandoned his cell phone is supported
      by substantial evidence

Voluntary abandonment is an ultimate fact or conclusion based on a combination of act and intent. *Evans*, 159 Wn.2d at 408. A trial court finds intent as an inference from objective factors. *Id.* As a factual determination, we review a trial court's finding of voluntary abandonment for substantial evidence. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). Determining the reasonableness of an inference of intent from proven facts is the province of the fact finder, not the appellate court. *See State v. Bencivenga*, 137 Wn.2d 703, 711, 974 P.2d 832 (1999). In this case, the trial court's finding that Samalia abandoned his cell phone is supported by substantial evidence and our case law.

The trial court's finding that Samalia voluntarily abandoned his cell phone reasonably follows from the undisputed facts of the case: Samalia was driving a stolen vehicle, and when Samalia stopped, he got out of the vehicle and faced Officer Yates. Then, instead of obeying Officer Yates' commands, Samalia ran away, abandoning the vehicle and its contents. Officer Yates attempted to catch Samalia, but Samalia escaped, and Officer Yates returned to the stolen vehicle. Inside the stolen vehicle, Officer Yates found the cell phone. Indeed, there is nothing in the record to suggest that Samalia protected the information on his cell phone by any security measures.

The trial court's finding of voluntary abandonment is also consistent with Washington case law, further demonstrating that its finding is supported by substantial evidence. Washington courts generally find voluntary abandonment when a defendant leaves an item in a place in which the defendant has no privacy interest as an attempt

to evade the police. For example, in *State v. Young*, a police officer noticed the defendant in the street engaged in suspicious behavior. 86 Wn. App. 194, 197, 935 P.2d 1372 (1997) (cited with approval by *Evans*, 159 Wn.2d at 410), *aff'd*, 135 Wn.2d 498, 957 P.2d 681 (1998). The officer turned on his patrol lights and drove toward the defendant. *Id.* As the officer approached, the defendant "walked rapidly toward some trees, tossed 'an apparent package or something' behind a tree, walked quickly away from the trees, and then resumed a normal walk down the sidewalk." *Id.* Suspecting involvement in drug activity, the officer retrieved and immediately searched the package. *Id.* at 198. The officer discovered drugs in the package and arrested the defendant. *Id.* The defendant moved to suppress all evidence from the search and arrest. *Id.* However, the Court of Appeals held that the search of the package did not violate the defendant's article I, section 7 private affairs rights because the defendant had voluntarily abandoned the package. *Id.* at 200-03; *see also State v. Whitaker*, 58 Wn. App. 851, 854-56, 795 P.2d 182 (1990) (holding that a defendant abandoned a bottle that contained drugs when he dropped the bottle onto the ground next to himself as he saw the police officers approaching him).

Conversely, Washington courts generally do not find voluntary abandonment if a defendant exhibits the intent to recover the property. In *Kealey*, a woman inadvertently left her purse on a couch in a store's shoe department. 80 Wn. App. at 165. A clerk found the purse and put it in a back room after opening it and smelling marijuana. *Id.* Shortly after the clerk removed the purse, the woman frantically returned to the shoe department, asked about her purse, and continued to search throughout the store until the store closed. *Id.* Store employees contacted the police

14

the next morning, and the police searched the bag without a warrant, finding drugs. *Id.* at 165-66.

Upon being charged, the woman moved to suppress all evidence gathered from the warrantless search of her purse. *Id.* The trial court suppressed the purse, and the Court of Appeals affirmed, looking to the common law to determine whether the woman voluntarily abandoned her purse or merely lost or misplaced it.[5] *Id.* at 171-73. The Court of Appeals ruled that the woman did not voluntarily abandon her purse,

> as demonstrated by her attempt to find the purse shortly after leaving it where she was trying on shoes. [The woman] had no intention of divesting herself of the purse or [she] would not have returned to retrieve the purse or behaved so frantically in searching for it.

*Id.* at 173-74 (footnote omitted). Rather, the Court of Appeals held that the woman's actions demonstrated that she mislaid her purse. *Id.* at 174. Because the woman did not voluntarily abandon her purse, the purse could not be searched without a warrant. *Id.*

In contrast to *Kealey*, the trial court reasonably inferred Samalia's intent to abandon his cell phone by his flight from the stolen vehicle despite Officer Yates' commands. This is unlike *Kealey*, where the woman's actions objectively demonstrated her intent to retrieve her property. Further, given that the area of the search is of critical importance, Samalia had no privacy interest in the stolen vehicle. *See State v. Zakel*, 61 Wn. App. 805, 810, 812 P.2d 512 (1991). Samalia had no privacy interest in the stolen vehicle because it was stolen and he fled in an attempt

---

[5] For purposes of this case, the Court of Appeals saw no distinction between "lost" or "mislaid" property and used the terms interchangeably. *Kealey*, 80 Wn. App. at 171.

to escape from law enforcement. Similarly in *Young*, the court found that the defendant voluntarily abandoned a box by placing it in a public space to avoid law enforcement. Accordingly, we affirm the holdings of the superior and appellate courts that the police search of Samalia's cell phone did not violate any constitutionally protected privacy interest.

V.    The Court of Appeals erred in applying the exigent circumstances and attenuation doctrines

We disapprove the Court of Appeals' additional reliance on the exigent circumstances and the attenuation doctrines because the State did not raise these doctrines at the trial court in response to Samalia's motion to suppress. "Courts should not consider grounds to limit application of the exclusionary rule when the State at a [motion to suppress] hearing offers no supporting facts or argument." *State v. Ibarra-Cisneros*, 172 Wn.2d 880, 885, 263 P.3d 591 (2011).

The Court of Appeals also held that the police search of Samalia's cell phone was too attenuated from the identification of Samalia to warrant suppression. *Samalia*, 186 Wn. App. at 230-31. Because the State argued neither the exigent circumstances doctrine nor the attenuation doctrine at the motion to suppress hearing, it was improper for the Court of Appeals to rule on these grounds.[6]

---

[6] For the same reasons, we reject amici Washington Association of Prosecuting Attorneys' and ACLU-WA's invitations to consider whether this search was proper under the police's community caretaking function.

CONCLUSION

We affirm Samalia's conviction on the ground that the information derived from Officer Yates' search of Samalia's cell phone was properly admitted as evidence under the abandonment doctrine. However, we decline to rely on the alternate grounds of the exigent circumstance doctrine and the attenuation doctrine.

_____Wiggins, J._____

WE CONCUR.

_____Madsen, C.J._____

_____González, J._____

_____Fairhurst, J._____

18

No. 91532-6

YU, J. (dissenting) — "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7. Judicially created doctrines that diminish the scope of a person's "private affairs" must be applied with great care—particularly where applying such doctrines to new technology opens intimate details of a person's life to warrantless government inspection. That is the situation presented today.

We are asked to consider whether the common law abandonment doctrine applies to technology that was inconceivable at the time the doctrine was formulated—digital data accessible through a cell phone.[1] To answer this question, we must distinguish between a cell phone as a physical object and a cell phone as a tool for accessing digital data that may touch on virtually every detail of

---

[1] My analysis focuses only on personal cell phones used for private purposes. Different considerations may be presented by a government-issued cell phone intended for use by a public employee in the scope of employment, or by a privately owned cell phone that contains public records because it was used to conduct government business. *See Nissen v. Pierce County*, 183 Wn.2d 863, 873, 875, 357 P.3d 45 (2015). Such considerations are not implicated here.

1

a person's private affairs. Drawing this distinction, I would hold that voluntarily abandoning a cell phone does *not* mean that all of its digital data is automatically open to warrantless searches by government officials looking for evidence of criminal activity.[2] I therefore respectfully dissent.

## ANALYSIS

It has long been the practice of this court to be cautious when asked to rule on constitutional privacy protections in the face of technological advances. In particular, common law doctrines regarding the scope of a person's private affairs cannot be applied to new technology without careful consideration of the doctrine's underlying justifications in light of new technologies and the practical realities of modern life. The reasoning underlying the abandonment doctrine for personal property generally cannot justify its application to digital data accessible through a cell phone, even if the phone itself has been voluntarily abandoned. In holding otherwise, the majority gives insufficient weight to the difference between the phone itself and the digital data it contains or may access, and incentivizes warrantless government intrusions into some of the most intimate details of a person's life in a manner that I believe is constitutionally intolerable.

---

[2] I agree with the majority that the search of the cell phone here cannot be justified by exigent circumstances, attenuation, or community caretaking because the State did not raise those justifications at the trial court level. Majority at 16.

2

A.    Common law doctrines limiting constitutional privacy protections cannot be applied mechanically to new technology

Rapidly advancing technology makes it both more difficult and more important to delineate the scope of a person's private affairs with care. "It would be foolish to contend that the degree of privacy secured to citizens by the Fourth Amendment has been entirely unaffected by the advance of technology." *Kyllo v. United States*, 533 U.S. 27, 33-34, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001). Nevertheless, when applying our state constitution, "[t]his court has consistently declined to require individuals to veil their affairs in secrecy and avoid sharing information in ways that have become an ordinary part of life." *State v. Hinton*, 179 Wn.2d 862, 874, 319 P.3d 9 (2014). "Thus, whether advanced technology leads to diminished *subjective* expectations of privacy does not resolve whether use of that technology without a warrant violates article I, section 7." *State v. Jackson*, 150 Wn.2d 251, 260, 76 P.3d 217 (2003) (emphasis added). Instead, our inquiry "focuses on 'those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass.'" *Id.* at 259-60 (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984)).

Of central importance to this inquiry is the need to specifically identify the actual nature of the government intrusion at issue and avoid any analysis that "strain[s] to apply analogies where they do not fit." *Hinton*, 179 Wn.2d at 873.

3

Thus, in the specific context of cell phone data, we have recognized that "[w]hile text messages have much in common with phone calls and letters, they are a unique form of communication" and therefore held that a personal text message remains the sender's private affair even after it has been transmitted. *Id.* In this discussion, we specifically noted that "[v]iewing the contents of people's text messages exposes a 'wealth of detail about [a person's] familial, political, professional, religious, and sexual associations.'" *Id.* at 869 (second alteration in original) (quoting *United States v. Jones*, 565 U.S.___, 132 S. Ct. 945, 955, 181 L. Ed. 2d 911 (2012) (Sotomayor, J., concurring)).

Likewise, the Supreme Court of the United States, when considering the search incident to arrest exception to the Fourth Amendment's warrant requirement, flatly rejected the notion that a cell phone is materially indistinguishable from other physical items that might be found on an arrestee's person and subjected to a warrantless search, such as a wallet, purse, or address book: "That is like saying a ride on horseback is materially indistinguishable from a flight to the moon." *Riley v. California*, 573 U.S. ___, 134 S. Ct. 2473, 2488, 189 L. Ed. 2d 430 (2014). The Court instead noted that

> [t]he term "cell phone" is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.

*Id.* at 2489. In addition to the extraordinary *amount* of information accessible through a cell phone, the Court also drew attention to the *types* of information a cell phone might contain or be used to access, including

> Internet search and browsing history . . . [, which] could reveal an individual's private interests or concerns—perhaps a search for certain symptoms of disease, coupled with frequent visits to WebMD . . . [;] [h]istoric location information . . . [, which] can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building . . . [; and] "apps," offer[ing] a range of tools for managing detailed information about all aspects of a person's life. There are apps for Democratic Party news and Republican Party news; apps for alcohol, drug, and gambling addictions; apps for sharing prayer requests; apps for tracking pregnancy symptoms; apps for planning your budget; apps for every conceivable hobby or pastime; apps for improving your romantic life. There are popular apps for buying or selling just about anything, and the records of such transactions may be accessible on the phone indefinitely.

*Id.* at 2490. The Court thus gave careful consideration to the practical implications of cell phone usage in light of the realities of modern life: "A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." *Id.* at 2491.

Notably, however, such considerations are neither new nor unique to the context of cell phones or the digital data they may access. In fact, both this court and the Supreme Court of the United States have repeatedly analyzed specific new technologies and their particular role in modern society when determining whether

5

a particular governmental intrusion constitutes a search. *See, e.g., Kyllo*, 533 U.S. at 36 (infrared thermal imaging of a home is a search, in part because "the rule we adopt *must take account of more sophisticated systems that are already in use or in development*" (emphasis added)); *Katz v. United States*, 389 U.S. 347, 352, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (electronic recording of calls made from a public telephone booth is a search, in part because "[t]o read the Constitution more narrowly *is to ignore the vital role that the public telephone has come to play in private communication*" (emphasis added)); *Jackson*, 150 Wn.2d at 262 (attaching a global positioning system (GPS) device to a person's car is a search, in part because "[*i*]*n this age,* vehicles are used to take people to a vast number of places that can reveal preferences, alignments, associations, personal ails and foibles" (emphasis added)); *State v. Young*, 123 Wn.2d 173, 184, 867 P.2d 593 (1994) (infrared thermal imaging of a home is a search, in part because "our legal right to privacy should reflect thoughtful and purposeful choices *rather than simply mirror the current state of the commercial technology industry*" (emphasis added)); *State v. Boland*, 115 Wn.2d 571, 576, 800 P.2d 1112 (1990) (going through a person's garbage after it had been left outside for collection is a search, in part because "[i]t would be improper to require that in order to maintain a reasonable expectation of privacy in one's trash that the owner must forego use of *ordinary methods of trash collection*" (emphasis added)); *State v. Gunwall*, 106 Wn.2d 54, 67, 720 P.2d 808

(1986) (obtaining a person's landline telephone records is a search, in part because the telephone "'is a personal and business necessity indispensable to one's ability to effectively communicate *in today's complex society*'" (emphasis added) (quoting *People v. Sporleder*, 666 P.2d 135, 141 (Colo. 1983))).

It is thus clear that when confronted with new technology, including digital data accessible through a cell phone, we may not employ a "mechanical application" of common law doctrines that limit constitutional protections against warrantless searches. *Riley*, 134 S. Ct at 2484. Rather, assuming the merits of the common law doctrine at issue generally, "any extension of that reasoning to digital data has to rest on its own bottom." *Id.* at 2489. While I agree with the majority that the abandonment of the phone as a physical object is not itself "a facet of modern communication," majority at 12, the *amount and nature* of information that may be recovered from a cell phone certainly is, and *that* is what the court must consider when applying preexisting common law doctrines to new technology. *See, e.g., Riley*, 134 S. Ct. at 2485 (rejecting a mechanical application of the search incident to arrest exception to cell phone data because unlike ordinary physical objects, cell phones "place vast quantities of personal information literally in the hands of individuals"); *State v. Miles*, 160 Wn.2d 236, 244, 156 P.3d 864 (2007) (our focus is "on the nature and extent of the information which may be obtained").

7

B.     The abandonment doctrine for personal property generally

This court has adopted the common law abandonment doctrine, which

provides that "[n]eeding neither a warrant nor probable cause, law enforcement

officers may retrieve and search voluntarily abandoned property without

implicating an individual's rights under the Fourth Amendment or under article I,

section 7 of our state constitution." *State v. Reynolds*, 144 Wn.2d 282, 287, 27

P.3d 200 (2001). The abandonment doctrine is premised on the notion that

"'where one abandons property, he is said to bring his right of privacy therein to an

end, and may not later complain about its subsequent seizure and use in evidence

against him.'" 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE

FOURTH AMENDMENT § 2.6(b), at 871 (5th ed. 2012) (quoting Edward G. Mascolo,

*The Role of Abandonment in the Law of Search and Seizure: An Application of*

*Misdirected Emphasis*, 20 BUFF. L. REV. 399, 400-01 (1971)).

Viewed through this lens, the abandonment doctrine goes to the threshold

issue of "when a search is not a search," *Kyllo*, 533 U.S. at 32, because a "search"

requires government intrusion into a person's "private affairs" within the meaning

of article I, section 7, or an invasion of a person's "reasonable expectation of

privacy" within the meaning of the Fourth Amendment. *Hinton*, 179 Wn.2d at

868. Digital data accessible through cell phones are certainly private affairs in

which a person has a reasonable expectation of privacy, and are thus entitled to

8

constitutional protection. Majority at 5-9. The question presented in this case is whether such data remain a person's private affairs if the cell phone itself has been voluntarily abandoned.[3]

C.    Digital cell phone data remains a private affair, even if the cell phone itself has been voluntarily abandoned

"To determine whether governmental conduct intrudes on a private affair, we look at the 'nature and extent of the information which may be obtained as a result of the government conduct' and at the historical treatment of the interest asserted." *Hinton*, 179 Wn.2d at 869 (quoting *Miles*, 160 Wn.2d at 244). The nature and extent of the information that may be obtained through a cell phone is breathtaking, and differs in both quantity and quality from the type of information that could be obtained from searching other types of personal property. Moreover, and particularly in light of the facts presented by this case, the majority's decision incentivizes warrantless government intrusions into the most intimate details of a person's life. For these reasons, I think it is clear that the abandonment doctrine

---

[3] For the purposes of this analysis, I assume that the trial court correctly determined the cell phone at issue here was voluntarily abandoned according to the criteria ordinarily applied to personal property generally. Clerk's Papers at 31; *see State v. Evans*, 159 Wn.2d 402, 408, 150 P.3d 105 (2007) (defining the question of voluntary abandonment as one of "a combination of act and intent" with the ultimate goal of determining "'whether the defendant in leaving the property has relinquished her reasonable expectation of privacy'" (internal quotation marks omitted) (quoting *State v. Dugas*, 109 Wn. App. 592, 595, 36 P.3d 577 (2001))).

cannot justifiably be applied to digital data accessible through a cell phone, even an abandoned one.

1.  The nature and extent of information that may be obtained through a government search of digital cell phone data does not diminish upon abandonment

As applied to most ordinary types of personal property, abandoning a privacy interest in the physical object itself is sufficient to abandon any privacy interest in the information that may be gleaned from inspecting the object because the major point of intrusion comes when the object is seized in the first place. Indeed, the first Supreme Court case to recognize the abandonment doctrine, in which the defendant dropped a jug of "moonshine whisky," rested on the holding that "there was no *seizure* in the sense of the law when the officers examined the contents of each after it had been abandoned." *Hester v. United States*, 265 U.S. 57, 58, 44 S. Ct. 445, 68 L. Ed. 898 (1924) (emphasis added); *cf. Abel v. United States*, 362 U.S. 217, 241, 80 S. Ct. 683, 4 L. Ed. 2d 668 (1960) ("There can be nothing unlawful in the Government's *appropriation* of such abandoned property." (emphasis added)). Any increased level of intrusion caused by examining the abandoned property after seizing it was not apparently at issue.

In the context of cell phones, however, the level of intrusion occasioned by an initial seizure pales in comparison to the level of intrusion occasioned by searching the phone's digital data. In the context of searches incident to arrest, the

Supreme Court noted that precedent considering such searches as applied to

physical property generally

> regarded any privacy interests retained by an individual after arrest as
> significantly diminished by the fact of the arrest itself. Cell phones,
> however, place vast quantities of personal information literally in the
> hands of individuals. A search of the information on a cell phone
> bears little resemblance to the type of brief physical search considered
> in [*United States v.*] *Robinson*[, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed.
> 2d 427 (1973)].

*Riley*, 134 S. Ct. at 2485. As noted above, the Court recognized that "[c]ell phones

differ in both a quantitative and a qualitative sense from other objects that might be

kept on an arrestee's person," noting the "immense storage capacity" of modern

cell phones and the fact that "certain types of data are also qualitatively different"

from those that previously existed in any physical form. *Id.* at 2489-90.

Therefore, the Court concluded, a search of a person's cell phone data is more akin

to "'ransacking his house for everything which may incriminate him'" than to

looking through physical items in the person's pockets at the time of arrest. *Id.* at

2491 (quoting *United States v. Kirschenblatt*, 16 F.2d 202, 203 (2d Cir. 1926)).

I do not see, and the majority does not explain, why the Court's astute

observations in the context of searches incident to arrest lose their force in the

context of voluntary abandonment. In answer to the notion that a person who

voluntarily abandons a physical cell phone voluntarily abandons any privacy

interest in any of the voluminous data detailing potentially every aspect of that

11

person's life, I quote the pointed words of amicus in this case: "It would be patently absurd to suggest that abandonment of a traditional key means that warrantless access is allowed to the house it locks; the same must be true of digital keys to electronic information." Amicus Curiae Br. of Am. Civil Liberties Union of Wash. at 11.

> 2. The majority's approach improperly incentivizes warrantless government searches of cell phone data

I also note that the distinction between voluntarily abandoned property on one hand, and lost or mislaid property on the other, provides little practical protection against government intrusion into a person's private affairs in the context of digital data accessible through a cell phone. *See* majority at 10 n.3. This is well illustrated by the facts presented here. The police officer in this case testified that the reason he looked through the cell phone at issue here was "[t]o see who the phone belonged to." Tr. of Stipulated Bench Trial (May 7, 2013) at 48. Although the officer was "hoping that the person that ran was also the person who owned the phone," he testified that he "couldn't recall either way" whether he thought the phone might have belonged to the rightful owner of the stolen vehicle, who certainly didn't voluntarily abandon her vehicle or its contents. *Id.* at 48-49. But the officer maintained that his purpose was "[t]o identify the person who owned the phone. . . . If that's the victim, then that's the victim." *Id.* at 50.

12

The cell phone turned out not to be the victim's in this case, but that provides little consolation or protection to crime victims or innocent third parties whose cell phones are discovered in the vicinity of a crime scene. The owner of a lost or mislaid cell phone might successfully prevent any information from the phone from being used against him or her in a criminal case, but can neither prevent nor undo the invasion of privacy that has already occurred when, as happened in this case, an investigating officer looks through a person's contact list for entries indicating an intimate or familial relation, such as "girlfriend" or "[s]weetheart."[4] *Id.* at 49.

In light of these facts, the majority's approach here effectively condones a practice of *assuming* that cell phones discovered without their owners are abandoned, and thus open to warrantless government searches for incriminating evidence (or, for that matter, any other information). I cannot join such an approach, and I do not believe our precedent allows it.[5] *See Hinton*, 179 Wn.2d at 881 (C. Johnson, J., concurring) ("[C]onsidering the wealth of personal and private information that is potentially stored on a cell phone, we should continue to

---

[4] To the extent that a limited examination of a lost or mislaid cell phone for the purpose of returning it to its owner might be allowable, that issue is not properly before us because the State did not raise that argument at the trial court level. However, I question whether community caretaking can justify the level of intrusion presented by the officer's actions here.

[5] I also note that even for personal property generally, federal law does not presume that discarded property has been voluntarily abandoned for Fourth Amendment purposes. Mascolo, *supra*, at 403-04. Our state law governing article I, section 7 can be no less protective.

13

recognize a rule that does not incentivize warrantless searches of cell phones."); *Jackson*, 150 Wn.2d at 263-64 ("If police are not required to obtain a warrant under article I, section 7 before attaching a GPS device to a citizen's vehicle, then there is no limitation on the State's use of these devices on any person's vehicle, whether criminal activity is suspected or not."); *Young*, 123 Wn.2d at 186 ("It is especially troubling that the police conducted thermal investigations not only on the defendant's home, but on the homes of his neighbors as well."). As is true for all searches, I would hold that a search of digital data, even on an abandoned cell phone, must be pursuant to a lawfully issued warrant, supported by probable cause and subject to "detached scrutiny by a neutral magistrate" with "precise limits established in advance by a specific court order." *Katz*, 389 U.S. at 356.

## CONCLUSION

The people of Washington are entitled to hold safe from government intrusion the unprecedented wealth of personal information accessible through a cell phone, even if the phone itself has been voluntarily abandoned. If government officials discover a cell phone and want to search its digital data for evidence of criminal activity, they may seize and secure the cell phone to preserve any evidence it may contain, but they must obtain a warrant before searching its digital data. Because the police did not obtain a warrant here, the search was unlawful and its fruits should have been suppressed. I respectfully dissent.

_____

15