# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>KYLE T.W. BELL,<br><br>Appellant. | No. 50522-3-II<br><br>UNPUBLISHED OPINION |

MAXA, C.J. – Kyle Bell appeals the trial court's revocation of his Special Sex Offender Sentencing Alternative (SSOSA), which was imposed after his conviction of second degree child rape.

Bell's community custody conditions included having no contact with minor children and remaining in SSOSA treatment. The State alleged that Bell violated these conditions by having contact with children, and the allegation caused Bell's treatment provider to discharge him from treatment. The trial court concluded that the State had failed to prove that Bell had contact with children, but revoked Bell's SSOSA because he no longer was in treatment.

We hold that (1) the State did not violate Bell's right to due process by failing to inform him in the written notice of the alleged violations that it was seeking to revoke his SSOSA; (2) the trial court did not abuse its discretion by revoking Bell's SSOSA; (3) the community custody condition prohibiting Bell from frequenting places where children congregate (condition 8) is improper, but the condition allowing his treatment provider and community corrections officer (CCO) to order plethysmograph testing (condition 11) is proper with modifications; (4) Bell

cannot challenge his legal financial obligations (LFOs) based on the 2018 amendments to the LFO statutes because his judgment and sentence was not on direct appeal when those amendments took effect; and (5) Bell's claims in his statement of additional grounds (SAG) have no merit.

Accordingly, we affirm the trial court's order revoking Bell's SSOSA, but we remand for the trial court to strike community custody condition 8 and to modify community custody condition 11.

## FACTS

In 2014, Bell pleaded guilty to second degree child rape. The trial court imposed a SSOSA. The judgment and sentence ordered confinement for a minimum term of 90 months and a maximum term of life, but only actual confinement of eight months with the remainder suspended for the duration of the SSOSA program.

The court also sentenced Bell to lifetime community custody and imposed community custody conditions. The community custody conditions included:

> 1. The defendant shall reside at a location and under living arrangements that have been approved in advance by the CCO, and shall not change such arrangements/location without prior approval;
> . . .
> 6. The defendant shall not have contact with minor children under the age of 18 years unless in the presence of a responsible adult who is capable of protecting the child and is aware of the conviction, and contact has been approved in advance by the [CCO] and the sexual offender's treatment therapist;
> . . .
> 8. The defendant shall not loiter in nor frequent places where children congregate such as parks, video arcades, and day care facilities or other such places as may be designated by the CCO and/or the state certified sexual deviancy treatment provider;
> 9. The defendant shall immediately upon release enter into and successfully participate in and complete a program offering sexual deviancy treatment through a state certified therapist;
> . . .

> 11. The defendant shall undergo periodic polygraph and/or plethysmograph testing to measure treatment progress and compliance at a frequency determined by his/her treatment provider and/or his/her [CCO].

Clerk's Papers (CP) at 60-61. The trial court also ordered Bell to pay certain LFOs.

Bell served the confinement portion of his SSOSA and was released on community custody in July 2014. In September, Bell was found to have violated a community custody condition prohibiting possession of ammunition and served a sanction of 15 days on a work crew.

In June 2016, the State filed a petition for an order revoking Bell's suspended sentence based on a report of violations written by CCO Aaron Anderson. The report stated that Bell admitted that for the previous nine months he had stayed at the residence of Lindsey Frazer at least three nights per week and had extensive contact with Frazer's three minor children.

In an order dated October 4, 2016, the trial court found that Bell had violated the terms of his community custody by failing to reside in a Department of Corrections (DOC) approved residence, failing to comply with treatment conditions, and having contact with minor children. The court ordered Bell to serve eight months of confinement. The court also modified Bell's sentence to require, among other things, that Bell remain in SSOSA treatment, continue in group sessions, and "[a]bstain from all relationships not sanctioned by the [treatment] provider, group and DOC." CP at 118. Bell served a portion of the ordered time in confinement and was released on community custody on November 28, 2016.

In March 2017, Anderson submitted a violation report alleging that Bell had been in contact with Frazer and her children. Anderson stated that he received a call about Bell being back at Frazer's residence with her children present. Anderson investigated and found Bell in Frazer's neighborhood. Anderson frisked Bell, found his cell phone, and checked the text

messages. Anderson stated that based on Bell's text messages it was clear that he was back in a relationship with Frazer, that he had been to her residence, and that he was having contact with her children.

Anderson's report further stated that he had called Bell's treatment provider, Jeff Crinean, and told Crinean what he had learned. Crinean subsequently informed Anderson that Bell had been discharged from treatment because he had violated his SSOSA treatment contract. Anderson's report recommended that the court revoke Bell's suspended sentence.

The State filed a petition for an order modifying Bell's sentence. Under the type of order requested, the petition had a checked box next to "Requiring the defendant to show cause why he or she should not be punished for noncompliance with sentence." CP at 130. The box was not checked next to "Revoking the sexual offender alternative suspended sentence and ordering execution of sentence." CP at 130. However, at a preliminary hearing the State stated that it was seeking to revoke the SSOSA.

The trial court held an evidentiary hearing. The State alleged two violations: having contact with minors and failing to complete SSOSA treatment as ordered by the court. Anderson testified about locating Bell in Frazer's neighborhood and searching Bell's cell phone for evidence that Bell was in contact with Frazer. The court admitted the text messages and photographs Anderson found on Bell's cell phone as an exhibit.

Anderson also testified that Crinean told him that Bell's SSOSA treatment contract required that his relationships be approved through treatment and that Crinean had discharged Bell from treatment because of the violation of that provision. Bell acknowledged that the treatment contract with Crinean stated that he must abstain from all relationships not sanctioned by Crinean and the treatment group.

4

Bell denied having any contact with Frazer's children since being released from jail in November 2016. He also presented a number of witnesses who testified that Frazer's children were never present when Bell was at Frazer's residence. In addition, Bell testified that he was not in a relationship, and specifically was not in a sexual relationship, with Frazer. However, he admitted that he and Frazer were in love with each other and that they did talk regularly and did see each other on occasion.

The trial court found that the State had not proven by a preponderance of the evidence that Bell had contact with minor children. However, the court found that Bell had failed to complete his SSOSA treatment as directed by the court and that the violation was willful. The court stated that Bell had been discharged from treatment because he was in a relationship without advance approval by his treatment provider. The court found that there was a relationship between Bell and Frazer and that Bell knew that the relationship was prohibited.

The trial court revoked Bell's SSOSA and ordered that he serve the original sentence of 90 months to life in confinement with credit for time already served. Bell appeals the trial court's order revoking the SSOSA.

ANALYSIS

A.    DUE PROCESS – WRITTEN NOTICE

Bell argues that the State violated his right to due process by failing to give him written notice that it intended to seek revocation of his SSOSA. We disagree.

The revocation of a SSOSA does not require the same level of due process as a criminal proceeding because an offender facing a revocation already has been found guilty beyond a reasonable doubt. *State v. McCormick*, 166 Wn.2d 689, 700, 213 P.3d 32 (2009). Offenders who allegedly violate a SSOSA condition are entitled to the same minimal due process rights as

those afforded during the revocation of probation or parole. *State v. Dahl*, 139 Wn.2d 678, 683, 990 P.2d 396 (1999).

Minimal due process for revocation of a SSOSA requires (1) written notice of the claimed violations, (2) disclosure of the evidence against the offender, (3) an opportunity to be heard, (4) the right to confront and cross-examine witnesses, (5) a neutral and detached hearing body, and (6) a statement by the court of the evidence relied on and the reasons for the revocation. *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L.Ed.2d 484 (1972)); *see also In re Pers. Restraint of Blackburn*, 168 Wn.2d 881, 884-87, 232 P.3d 1091 (2010) (discussing required notice, *Dahl*, and *Morrissey* in the context of violation of a community custody provision punishable by confinement). "[P]roper notice must set forth all alleged . . . violations so that a defendant has the opportunity to marshal the facts in his defense." *Dahl*, 139 Wn.2d at 684.

Here, the State filed a petition for an order requiring Bell to show cause why he should not be punished for noncompliance with his sentence. The petition attached a detailed narrative report of violations, which alleged that Bell had violated his community custody conditions by having contact with minor children and failing to complete SSOSA treatment. As a result, there is no question that Bell received written notice of the claimed *violations* and disclosure of the facts supporting the allegations.

Bell argues that the State also was required to provide written notice that it was seeking to revoke his SSOSA. However, *Dahl* expressly states that the State must provide "written notice of the *claimed violations*." *Dahl*, 139 Wn.2d at 683 (emphasis added). "Due process requires that the State inform the offender of the *specific violations alleged* and the facts that the State will rely on to prove those violations." *Id.* at 685 (emphasis added). *Dahl* does not hold

6

that minimal due process requires the State to give written notice of the type of punishment it will seek for a SSOSA violation. And Bell provides no other authority for his argument.

We hold that the State's failure to give Bell written notice that it intended to seek revocation of his SSOSA did not violate Bell's minimal due process rights.

B.       RCW 9.94A.670 – REVOCATION OF SSOSA

Bell argues that the trial court erred by revoking his SSOSA based on his willful failure to complete treatment. He claims that he was discharged from treatment based on his CCO's allegations regarding his relationship with Frazer and contact with her children, most of which the trial court found were not proved by a preponderance of the evidence. We disagree.

RCW 9.94A.670 authorizes a sentencing court to impose a SSOSA if the offender is eligible under RCW 9.94A.670(2) and based on considerations identified in RCW 9.94A.670(4). Once the sentencing court determines that a SSOSA is appropriate, the court imposes a sentence and then may suspend execution of the sentence subject to certain mandatory and discretionary conditions. RCW 9.94A.670(4)-(6). Mandatory conditions include a term of community custody and treatment for up to five years. RCW 9.94A.670(5)(b), (c).

The trial court also has the authority under RCW 9.94A.670(11) to revoke the suspended sentence:

> The court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The offender violates the conditions of the suspended sentence, or (b) the court finds that the offender is failing to make satisfactory progress in treatment.

We review a trial court's decision to revoke a SSOSA for an abuse of discretion. *State v. Miller*, 180 Wn. App. 413, 416-17, 325 P.3d 230 (2014). A court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or reasons. *Id.* at 417.

Here, the trial court found that Bell had failed to complete his SSOSA treatment. This finding was based on undisputed evidence from the CCO that Bell's treatment provider had discharged him from treatment for being in a relationship that the provider had not approved. And the trial court's October 2016 order expressly required Bell to remain in SSOSA treatment and to abstain from all relationships not sanctioned by the treatment provider.

Bell argues that the trial court found that the State had not proved most of the CCO's allegations. However, the court found that the State had failed to prove only the allegation that Bell had contact with Frazer's children. The court expressly found that Bell was in a relationship with Frazer and that he knew that such a relationship was prohibited, and that relationship caused the violation – not remaining in treatment – that resulted in revocation of the SSOSA.

We hold that the trial court did not abuse its discretion in revoking Bell's SSOSA.

C.     COMMUNITY CUSTODY CONDITIONS

Bell argues that the community custody conditions prohibiting him from frequenting places where children congregate (condition 8) and allowing his CCO to order plethysmograph testing (condition 11) were improper. We hold that condition 8 is improper, but hold that condition 11 is proper once modified to strike certain provisions.

1.     SSOSA Community Custody Conditions

Under RCW 9.94A.670(5)(b), a sentencing court ordering a SSOSA must make any suspended sentence subject to the imposition of a term of community custody. However, a sentencing court may only impose community custody conditions the legislature has authorized. *State v. Warnock,* 174 Wn. App. 608, 611, 299 P.3d 1173 (2013). We review de novo whether the sentencing court acted with statutory authority. *State v. Johnson,* 180 Wn. App. 318, 325, 327 P.3d 704 (2014).

2. Frequenting Places Where Children Congregate

Condition 8 states,

> The defendant shall not loiter in nor frequent places where children congregate such as parks, video arcades, and day care facilities or other such places as may be designated by the CCO and/or the state certified sexual deviancy treatment provider.

CP at 61. Bell challenges this community custody condition as unconstitutionally vague.

Under the Fourteenth Amendment to the Unites States Constitution and article I, section 3 of the Washington Constitution, community custody conditions that are unconstitutionally vague violate due process. *State v. Wallmuller*, 4 Wn. App. 2d 698, 701, 423 P.3d 282 (2018), *rev. granted*, 192 Wn.2d 1009 (2019). A community custody condition is vague if either "(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).

We review a community custody condition for an abuse of discretion. *Wallmuller* 4 Wn. App. 2d at 701. However, a trial court abuses its discretion if it imposes an unconstitutional custody condition. *Id.* Unlike statutes, we do not presume that community custody conditions are valid. *Id.*

In *Wallmuller*, this court held in a 2-1 decision that a community custody condition prohibiting a defendant from frequenting "places where children congregate such as parks, video arcades, campgrounds, and shopping malls" was unconstitutionally vague. *Id.* at 700, 702-04. The court stated that the phrase "where children congregate" was vague because it did not give ordinary people sufficient notice to understand what places the defendant could not go. *Id.* at 703-04. The court stated that even though the condition provided a short list of examples of

9

places the defendant could not go, the condition was still vague because the phrase "such as" indicated other unidentified places could also violate the condition. *Id.* at 703.[1]

Here, condition 8 includes the phrase "places where children congregate." CP at 61. We follow *Wallmuller* and hold that this phrase is too vague to give ordinary people sufficient notice of what locations would violate the condition.

In addition, condition 8 also prohibited Bell from frequenting "other such places as may be designated by the CCO and/or the state certified sexual deviancy treatment provider." CP at 61. In *State v. Irwin*, the court addressed a community custody condition that prohibited a defendant from "frequent[ing] areas where minor children are known to congregate, as defined by the supervising CCO." 191 Wn. App. 644, 652, 364 P.3d 830 (2015). The court held that this condition was unconstitutionally vague because it left the condition vulnerable to arbitrary enforcement. *Id.* at 654-55. Although condition 8 has somewhat different language, as in *Irwin* this condition allows for arbitrary enforcement and therefore is vague.

We hold that condition 8 is unconstitutionally vague and remand for the trial court to strike this condition.

3.    Plethysmograph Testing

Condition 11 states,

> The defendant shall undergo periodic polygraph and/or plethysmograph testing to measure treatment progress *and compliance* at a frequency determined by his/her treatment provider *and/or his/her [CCO]*.

---

[1] Division Three of this court has held that a community custody condition containing the phrase "where children congregate" was not unconstitutionally vague. *State v. Johnson*, 4 Wn. App. 2d 352, 360-61, 421 P.3d 969, *rev. denied*, 192 Wn.2d 1003 (2018).

CP at 61 (emphasis added). Bell argues that community custody condition 11 violates his due process right to be free from bodily intrusion. The State concedes that allowing the CCO to order plethysmograph testing *for monitoring purposes* is improper.

A trial court has authority to order a defendant to submit to plethysmograph testing in conjunction with sexual deviancy treatment. *State v. Johnson*, 184 Wn. App. 777, 780, 340 P.3d 230 (2014). However, using plethysmograph testing as a monitoring tool is improper. *See id.* at 780-81. Therefore, a community custody condition can allow plethysmograph testing only for treatment purposes and not for monitoring. *Id.* at 781.

Here, the trial court ordered Bell to undergo sexual deviancy treatment. The court's modified sentence also required Bell to remain in SSOSA treatment. Therefore, condition 11 was proper to the extent that it allowed plethysmograph testing for treatment purposes. But that condition was improper to the extent it allowed the CCO to order plethysmograph testing for purposes of monitoring compliance with other community custody conditions. Therefore, condition 11 can be upheld if the words "and compliance" and "and/or his/her Community Corrections Officer" are stricken.

We remand for the trial court to strike to words "and compliance" and "and/or his/her Community Corrections Officer" from community custody condition 11.

D.     CHALLENGE TO LFOS

Bell argues that certain discretionary and mandatory LFOs must be stricken under the 2018 amendments to the LFO statutes. We disagree.

In 2018, the legislature amended various LFO statutes. The Supreme Court in *State v. Ramirez* held that these amendments apply prospectively to cases pending on direct appeal. 191 Wn.2d 732, 749-50, 426 P.3d 714 (2018). The court stated that the amendments applied to cases

11

pending on direct appeal because the imposition of LFOs is governed by the statutes in effect at the termination of the case, and those cases were not final at the time the statute was enacted. *Id.* at 749.

This court in *In re Personal Restraint of Wolf* considered whether LFOs imposed as part of a SSOSA in 2008 were appealable as part of a SSOSA revocation appeal in 2015. 196 Wn. App. 496, 509-10, 384 P.3d 591 (2016). The court stated that because the SSOSA revocation did not involve the LFOs from the original sentence and the defendant did not appeal the original sentence, the LFOs were final on the date the original sentence was entered in 2008. *Id.* Therefore, the court held that the defendant's LFO claim was time-barred. *Id.* at 510-11.

Here, the trial court imposed LFOs as part of Bell's original sentence in 2014. Bell did not appeal his original sentence. The revocation of Bell's SSOSA did not involve the LFOs imposed in 2014 and did not impose any additional financial obligations on Bell. Therefore, although Bell's appeal of his *SSOSA revocation* was pending on direct appeal when the LFO statutes were amended, no direct appeal of Bell's *judgment and sentence* was pending. Accordingly, *Ramirez* is inapplicable to Bell's LFOs.

We hold that the trial court's imposition of LFOs was final at the termination of Bell's case in 2014 and therefore that the 2018 amendments to the LFO statutes do not apply.

E.     SAG CLAIMS

1.     Search of Cell Phone

Bell asserts that the trial court's revocation of his SSOSA must be reversed because the court's ruling was based on evidence obtained through an illegal search of his cell phone. We disagree.

Article I, section 7 of the Washington Constitution states that "[n]o person shall be disturbed in his private affairs . . . without authority of law." The term "authority of law" refers to a valid warrant, subject to limited exceptions. *State v. Cornwell*, 190 Wn.2d 296, 301, 412 P.3d 1265 (2018). Cell phones and the data they contain are "private affairs" under article I, section 7. *State v. Samalia*, 186 Wn.2d 262, 272, 375 P.3d 1082 (2016). Therefore, law enforcement generally cannot search a person's cell phone without a warrant unless an exception to the warrant requirement applies. *Id.*

However, "individuals on probation are not entitled to the full protection of article I, section 7" because they have a reduced expectations of privacy. *Cornwell*, 190 Wn.2d at 301. Probationers have diminished privacy rights because, while they continue to serve their sentence in the community, they remain in the custody of the law even though they have been released from confinement. *State v. Reichert*, 158 Wn. App. 374, 386, 242 P.3d 44 (2010). The same principles apply to offenders released from confinement who are subject to community custody conditions. *State v. Rooney*, 190 Wn. App. 653, 659, 360 P.3d 913 (2015).

A CCO may search an individual without a warrant if the CCO has a " 'well-founded or reasonable suspicion of a probation violation.' " *Cornwell*, 190 Wn.2d at 302 (quoting *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009)); *see also* RCW 9.94A.631(1) (allowing a CCO to conduct a warrantless search if he or she has "reasonable cause to believe that an offender has violated a condition or requirement of the sentence"). A reasonable suspicion exists if specific and articulable facts suggest that there is a substantial possibility a violation occurred. *See State v. Jardinez*, 184 Wn. App. 518, 524, 338 P.3d 292 (2014). In addition, probationers retain some expectation of privacy, and the State's authority to search probationers without a

warrant is limited to property that bears a nexus to the suspected probation violation. *Cornwell*, 190 Wn.2d at 306.

Here, Bell previously had violated his community custody conditions by having contact with Frazer's minor children. Anderson received a call about Bell being back at Frazer's residence with her children present. Anderson then encountered Bell in Frazer's neighborhood. Anderson stated that he believed Bell was back in a relationship with Frazer and could have been in contact with her minor children. Therefore, Anderson's search was based on specific and articulable facts which suggested that there was a substantial possibility Bell had contacted Frazer's minor children.

Anderson asked to search Bell's cell phone because he believed Bell had been exchanging text messages with Frazer and that the text messages would prove that Bell had violated his community custody conditions. Therefore, there was a nexus between Bell's cell phone and the suspected violation because the cell phone could indicate whether Bell had been communicating with Frazer in a manner consistent with a romantic relationship or about her children.

Accordingly, we hold that Anderson's warrantless search of Bell's cell phone was not unlawful.

2. Ineffective Assistance of Counsel

Bell asserts that defense counsel was ineffective for failing to file a motion to suppress the text messages. But as discussed above, we hold that the search of Bell's cell phone was not unlawful. Therefore, a trial court likely would not have granted a motion to suppress evidence from the search of Bell's cell phone. Accordingly, we hold that Bell's claim of ineffective assistance of counsel fails.

### 3. Infringement of Free Speech

Bell asserts that the trial court infringed on his right of free speech by using his text message conversations with Frazer as evidence that he violated his community custody conditions. We disagree.

Bell seems to claim that the trial court criminalized his communications with Frazer. But the trial court revoked Bell's SSOSA because of his conduct – having a relationship without authorization and failing to complete treatment – not his speech. And Bell cites no authority for the proposition that using speech as evidence violates the First Amendment. Accordingly, we hold that Bell's claim that the trial court violated his free speech rights fails.

### CONCLUSION

We affirm the trial court's order revoking Bell's SSOSA sentence, but we remand for the trial court to strike community custody condition 8 and the words "and compliance" and "and/or his/her Community Corrections Officer" from community custody condition 11.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

I concur:

JOHANSON, J.P.T.

15

LEE, J. (concurring in part, dissenting in part) — I concur with the majority's opinion in all respects, except with regard to Bell's challenge to community custody condition 8; specifically, the clause in community custody condition 8 prohibiting Bell from frequenting places where children congregate. Bell argues that the community custody condition 8 is unconstitutionally vague.

I agree with the majority on all other challenged clauses in community custody condition 8; however, I depart from the majority with regard to the specific clause prohibiting Bell from frequenting places where children congregate. For the same reasons articulated in my dissent in *State v. Wallmuller*, 4 Wn. App. 2d 698, 704-14, 423 P.3d 282 (2018), I respectfully disagree with the majority that this particular clause in community custody condition 8 is unconstitutionally vague. I would hold that the clause prohibiting Bell from frequenting places where children congregate is not unconstitutionally vague.



Lee, J.